Amanda BORNE, by Next Friend Bruce BORNE and Marilou Borne, Plaintiffs–Appellants,

v.

NORTHWEST ALLEN COUNTY SCHOOL CORPORATION and its Employees, Ellen West and Gilbert Baumgartner, Rita Michael, Lena Lindsey and Steven Fair, Defendants–Appellees.

No. 02A03–8801–CV–17.

Court of Appeals of Indiana, Third District.

Jan. 17, 1989.

Solomon L. Lowenstein, Jr., Roger W. Hultquist, Fort Wayne, for plaintiffs-appellants.

Mark W. Baeverstad, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for defendants-appellees.

GARRARD, Presiding Judge.

The plaintiff, Amanda Borne (Amanda), by and through her next friend and her parents Bruce and Marilou Borne, appeals a decision of the Allen County Superior Court that granted summary judgment in favor of the defendant school corporation, teacher and principal.

## I. Issues

This case presents the following issues:

a. Whether the school corporation waived its affirmative defense of discretionary act-based governmental immunity from prosecution by waiting until it filed its motion for summary judgment to raise that defense;

b. Whether the trial court erred in ruling that the school corporation is immune from liability for professional judgments made by its employee, a special education teacher, concerning the degree of supervision required by mentally handicapped students on a field trip; and

c. Whether the Indiana Child Abuse Act imposed a ministerial duty upon the school corporation to report incidents of sexual contact between Amanda and her elementary school classmates to a child protection service or a law enforcement agency when the school corporation became aware of those incidents.

## II. Facts

In September, 1984, when the incident that spawned this litigation occurred, Amanda Borne was a special education student at the Huntertown Elementary School, which was operated by the Northwest Allen County School Corporation (the school corporation). Her teacher was Mrs. Ellen West.

Amanda was involved in several incidents of sexual exploration with her male classmates at the Huntertown School, beginning in the third grade and ending in the sixth. The third grade episodes were limited to two instances in which defendant Gregory Michael allegedly dropped his pants and exposed himself to Amanda. In the fifth grade, Amanda, Greg, and Greg's fellow defendants Scott Lindsay and Eugene Fair were discovered in a remote area of the school playground at the noontime recess with their pants down. In both instances, Ellen West notified the parents of the students who had participated and sexual contact ceased thereafter.

The incident from whence this litigation arose occurred on September 21, 1984, when Amanda was eleven years old and in the sixth grade. The incident occurred during a class outing at the Fox Island Nature Preserve near Fort Wayne. Amanda, her five classmates and Mrs. West participated in the outing. After hiking through the Preserve, the students and Mrs. West started a campfire and then ate lunch. When they had finished lunch, Amanda, Greg, Scott and Eugene sought and received permission from Mrs. West to go to the nearby nature center in order to wash their hands in the bathroom located there.

The four students entered the nature center but then exited through a back door and entered the adjoining woods, where Amanda, Greg and Scott pulled down their pants. Amanda testified in her deposition that Scott unsuccessfully attempted to insert his penis into her vagina and that she and Scott remained standing during the entire time that they were in the woods with Greg and Eugene.

When Mrs. West noticed that the four students had not returned to the picnic area in a reasonable amount of time, she blew a whistle in order to alert them that they should return to the picnic area. When the students emerged from the woods after hearing the whistle, Mrs. West questioned them about their absence and learned that they had taken down their pants, but not that Scott had attempted to insert his penis into Amanda's vagina. The parties disagree about whether Amanda told Mrs. West at this time that she had participated voluntarily in the activity in the woods.

Later on the day of the field trip, Mrs. West wrote letters to the parents of the four students informing them of the incident. She also punished the students. No additional sexual incidents occurred among Mrs. West's students during the 1984–85 school year. Amanda transferred to a private school the following year. Neither Mrs. West nor any other employee of the school corporation reported the September 21st incident to the Allen County Department of Welfare or to a law enforcement agency.

On April 18, 1986, Amanda, by and through her next friend and her parents, filed suit against the school corporation, seeking to recover damages to defray the expense of the psychological counseling that Amanda underwent subsequent to the incident at Fox Island Nature Preserve. The school corporation answered the Bornes' complaint on May 9, 1986 and filed a request for a jury trial; it then filed an amended answer on June 2, 1986.

On June 25, 1987, the school corporation filed a motion for summary judgment, to which the Bornes responded on August 10, 1987 by filing a motion to strike the school corporation's governmental immunity defense, which had not been raised in either its answer or its amended answer. On August 17, 1987, the Bornes filed a memorandum in opposition to the school corporation's motion for summary judgment. The trial court granted the school corporation's motion for summary judgment and denied the Bornes' motion to strike, also on August 17, 1987. On August 19th, the school corporation filed a motion to make the

granting of its summary judgment request a final judgment; the court granted the motion for entry of final judgment on September 21, 1987. The latter decision only applied to defendants Northwest Allen County School Corporation, Ellen West, and Gilbert Baumgartner, the principal of Huntertown School. It did not end the Bornes' actions against the parents of the three boys who had participated in the incident at Fox Island Nature Preserve.

On November 20, 1987, the Bornes filed a motion to correct errors, which the trial court denied. The Bornes then filed this appeal.

### III. Discussion and Analysis

The Bornes argue first that the school corporation waived its affirmative defense of discretionary act-based governmental immunity from liability because it filed an answer to the Bornes' complaint that contained no affirmative defenses as required by Trial Rule 8(C). The Bornes point out that even the school corporation's amended answer contained no reference to the immunity defense, but instead stated, as an affirmative defense, that the "plaintiff failed to comply with the provisions of the Indiana Tort Claims Act with respect to providing proper notice of said claim with the defendants...."

The school corporation contends that its failure to raise the governmental immunity defense in its answer did not prejudice the Bornes because it clearly raised this defense in its motion for summary judgment, thereby affording the Bornes a full and fair opportunity to challenge the defense at trial. The school corporation further argues that it did not waive its governmental immunity defense because the belated raising of that defense did not cause prejudice to the Bornes. We agree.

In *Honeywell, Inc. v. Wilson* (1986), Ind. App., 500 N.E.2d 1251, the defendant raised, for the first time, in a summary judgment motion, an affirmative defense that the trial court deemed to have been waived because the defendant had not raised it in his answer. We reversed because we concluded that the defendant had not demonstrated that he had been prejudiced by the defendant's failure to raise the affirmative defense in his answer. We stated:

"These [trial] rules are designed to avoid pleading traps and, to the greatest extent possible, ensure that cases are tried on the issues that their facts present. Thus, the focus is not on technical procedure used to raise the issue, but on the issue's legal merits."

*Id.* at 1252.

The focus of our analysis in Honeywell then, was not whether the defendant could have raised his affirmative defense earlier, but instead, whether the defendant's failure to raise the affirmative defense earlier prejudiced the plaintiff. Our focus in this case is identical. A plaintiff must "affirmatively show prejudice to his case before [a belatedly raised affirmative defense] can be rejected." *Kohlman v. Finkelstein* (1987), Ind.App., 509 N.E.2d 228, 231. "The presumption is that issues can be raised as they, in good faith, are developed. This presumption can be rebutted by the party against whom the new issue is raised by an affirmative showing of prejudice. *Selvia v. Reitmeyer* (1973), 156 Ind.App. 203, 295 N.E.2d 869, *rehearing denied.* In this context, delay alone does not constitute sufficient prejudice to overcome the presumption. Instead there must be a showing that the party in opposition will be deprived of, or otherwise seriously hindered in the pursuit of some legal right if injection of the new issue is permitted. *State Farm Mut. Auto Ins. Co. v. Shuman, Admx.* (1977), 175 Ind.App. 186, 370 N.E.2d 941, *trans. denied."* *Honeywell v. Wilson, supra,* 500 N.E.2d at 1252.

This view is supported by *Moore's Federal Practice*, which observes:

Rule 8(C) might seem to imply that affirmative defenses may be raised only by a pleading ... and not otherwise. This, however, is too narrow a construction of the rule.

*Moore's* continues:

[T]here is a split of authority as to whether a defendant may, subsequent to

filing an answer, move for summary judgment on the basis of an affirmative defense omitted from the answer. While some cases hold that an affirmative defense not raised in the answer is waived and, therefore, not available as a basis for a summary judgment motion, other holdings provide that, absent prejudice to plaintiff, an affirmative defense may be raised by a motion for summary judgment regardless of whether it was pleaded in the answer or not. The latter position is more in keeping with the general purpose of the Federal Rules to avoid decisions based on pleading technicalities rather than on the merits of the case. 2A J. Moore, *Moore's Federal Practice*, 8.28 (1987), pp. 8–206—8–208.

In this case, the Bornes have not demonstrated that they were deprived of or hindered in pursuing a legal right by the failure of the school corporation to raise the governmental immunity defense until it filed its motion for summary judgment. Had the court denied the motion for summary judgment and had this case proceeded to trial, the Bornes would have had sufficient opportunity at trial to challenge the governmental immunity defense. They were afforded adequate time to prepare for this task, as the trial court reset the date of its hearing on the summary judgment motion from July 21, 1987 to August 17, 1987. This provided the Bornes with additional time in which to conduct discovery. Therefore, the Bornes' contention that the school corporation did not follow the procedure set out in Indiana Rules of Procedure, Trial Rule 8(C), thereby creating costly delays, "does not rise to the level of prejudice necessary to bar an otherwise genuine issue." *Honeywell v. Wilson, supra,* 500 N.E.2d at 1252.

We thus determine that the school corporation did not waive its discretionary act-based governmental immunity defense and that the trial court properly denied the Bornes' motion to strike that defense from the school corporation's summary judgment motion.

Secondly, the Bornes argue that the school corporation (and, by extension, its employees, Principal Gilbert Baumgartner and teacher Ellen West) had a ministerial duty to protect Amanda from sexual abuse by her three male classmates and, therefore, that discretionary act-based governmental immunity is unavailable as a defense in this action. Specifically, the Bornes contend that because the school corporation was aware that incidents of sexual contact between Amanda and her male classmates had occurred in the third and fifth grades, the school corporation should have taken steps to protect Amanda from a recurrence of such incidents. Because it did not do so, the Bornes maintain, the school corporation violated its duty of care to Amanda. Therefore, in the Bornes' view, the trial court erred when it granted the school corporation's motion for summary judgment on the grounds that the school corporation's acts were exercises of professional discretion that are protected from legal challenge by the Indiana Tort Claims Act (IC 34–4–16.5–3).

The school corporation responds that it is immune from liability under IC 34–4–16.5–3(6) because the actions of its employees Ellen West and Gilbert Baumgartner in this case were discretionary exercises of professional judgment.

We must reject the school corporation's argument. However, we do not address the question whether the school corporation had a ministerial duty to protect Amanda from sexual abuse by her male classmates. The Indiana Supreme Court recently ruled in *Peavler v. Board of Commissioners* (1988), Ind. 528 N.E.2d 40 that professional judgments will no longer be immune from legal challenge under IC 34–4–16.5–3(6) unless they can be properly characterized as policy decisions that have resulted from a conscious balancing of risks and benefits and/or weighing of priorities. Because the actions of school employees West and Baumgartner in this case cannot be properly characterized as policy decisions, those actions are not protected from suit by IC 34–4–16.5–3(6). Therefore, the trial court's granting of the school corporation's motion for summary judgment

on the basis of discretionary act-based immunity must be reversed.

The Indiana Tort Claims Act provides that "[a] governmental entity or employee acting within the scope of his employment is not liable if a loss results from the performance of a discretionary function" IC 34–4–16.5–3(6). We have distinguished, historically, between ministerial and discretionary acts in order to determine if certain conduct is included within the above immunity provision. A ministerial act "is one which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done. *State Dep't. of Mental Health v. Allen* (1981), Ind.App., 427 N.E.2d 2, 4." *City of Hammond v. Cataldi* (1983), Ind. App., 449 N.E.2d 1184, 1187. Conversely, "[a] duty is discretionary when it involves on the part of the [employee] to determine whether or not he should perform a certain act, and, if so, in what particular way ... *Adams v. Schneider* (1919), 71 Ind.App. 249, 124 N.E. 718, 720." *Id.* at 1186.

The actions of the school employees that the Bornes challenge are discretionary, hence would have been protected from legal challenge by IC 34–4–16.5–3(6) under traditional ministerial/discretionary analysis. In particular, the decision of Mrs. West to permit Amanda and her three male classmates to go to the bathroom at Fox Island's nature center unsupervised was a professional judgment that was based, presumably, upon her training in special education and her knowledge of the four students involved.

However, the Indiana Supreme Court expressly rejected the ministerial/discretionary standard in *Peavler v. Board of Commissioners* on the ground that that standard fails to establish clear parameters between protected and unprotected governmental acts. The Court stated: "It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail. *Ham v. City of Los Angeles*, 46 Cal.App. 148, 162, 189 P. 462, 468 (1920). If discretionary functions included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would fall within the exception. *Sterling v. Bloom*, 111 Idaho 211, 227, 723 P.2d 755, 771 (1986)." *Peavler*, 528 N.E.2d at 43.

The Court proceeded to chart a new course in discretionary act-based immunity analysis, stating that "[i]n defining discretionary acts immune under the I.T.C.A., we reject the ministerial/discretionary test in favor of the planning/operational test, to be applied in light of the policy and rationale supporting governmental immunity." *Peavler*, 528 N.E.2d at 46.

The planning/operational test, which has long been used by the United States Supreme Court in determining the parameters of discretionary-act based immunity under the Federal Tort Claims Act (F.T.C.A.), 28 U.S.C. § 1346(b) (1982), does not extend immunity to all acts that involve choice or judgment. *See Dalehite v. United States* (1953), 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427. Instead, as the Indiana Supreme Court pointed out in *Peavler*, when the planning/operational test controls, "[t]he discretionary function exception insulates only those significant policy and political decisions which cannot be assessed by customary tort standards. In this sense, the word discretionary does not mean mere judgment or discernment. Rather, it refers to the exercise of political power which is held accountable only to the Constitution or the political process. *Miller v. United States*, 583 F.2d 857, 866–67 (6th Cir.1978)." *Peavler*, 528 N.E.2d at 45.

The Court also noted in *Peavler* that, under the planning/operational test, "the type of discretion that may be immunized from tort liability is generally that attributable to the essence of governing. *Enghauser Mfg. Co. v. Erickson Engineering*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983). Planning activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function that involves formulation of basic policy decisions characterized by official judgment or

discretion in weighing alternatives and choosing public policy. *Marrek v. Cleveland Metroparks Board of Commissioners*, 9 Ohio St.3d 194, 459 N.E.2d 873 (1984). Government decisions about policy formation that involve assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources are also planning activities. *Industrial Indemnity Co. v. Alaska*, 669 P.2d 561, 564–65 (Alaska 1983)." 528 N.E.2d at 45.

The *Peavler* Court explained that the crucial judicial inquiry associated with the planning/operational test is "not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations. *Blessing v. United States*, 447 F.Supp. 1160, 1178 (E.D.Penn.1978)." 528 N.E.2d at 44. Therefore, "[t]he governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Little v. Wimmer*, 303 Or. 580, 739 P.2d 564 (1987); *Johnson v. State*, 69 Cal.2d 782, 794 n. 8, 447 P.2d 352, 361 n. 8, 73 Cal.Rptr. 240, 249 n. 8 (1968)." 528 N.E.2d at 46.

■ An application of the planning/operational test to the circumstances of this case compels the conclusion that the actions of Ellen West and Gilbert Baumgartner are not protected from legal challenge by IC 34–4–16.5–3(6). Mrs. West's decision to permit Amanda and the three boys to leave the picnic area temporarily was a professional judgment but it was not a policy decision. Mrs. West responded to the immediate hygienic needs of four students on a particular field trip, but she did not attempt to establish general guidelines for student hygiene or student behavior on field trips, nor did she try to set a standard for the degree of control a teacher should exercise over pupils on such trips. Although Mrs. West may have applied general principles of educational leadership when she granted the students' request to go to the bathroom, she clearly did not fashion such principles. *See* 528 N.E.2d at 47. Thus, Mrs. West's professional judgment in

this instance is not immune from suit under IC 34–4–16.5–3(6).

■ Of course, the fact that Mrs. West is not immune from suit carries no implication that her activities were such as to render her and the school liable. The duty imposed upon them is simply to exercise reasonable supervision over their students. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 707. Arguably a breach of that duty has not been shown. However, we decline to decide that question because the focus of the materials and arguments before the trial court and here was limited to consideration of the immunity defense. Upon remand, with or without the benefit of additional factual materials, the parties may seek consideration of whether a genuine issue exists for trial on the question of whether Mrs. West breached her duty of reasonable supervision.

The claim against Principal Baumgartner rests upon substantially different grounds. There is no evidence or contention that on the date in question he failed to exercise reasonable supervision of the students. Instead Bornes' premise their liability claim upon the principal's failure to report the *prior* incidents to a child protection agency or law enforcement officials. They contend this violated a duty imposed by IC 31–6–11–1 *et seq.*

That statute empowers county welfare departments to establish local child protection service units. IC 31–6–11–10. It directs that *any individual* who has reason to believe that a child is a victim of child abuse or neglect shall make an oral report to the local child protection service or law enforcement agency. IC 31–6–11–3, 4. The service must then promptly prepare a written report and furnish copies to the prosecutor and the appropriate law enforcement agency. IC 31–6–11–5. In addition, the service shall conduct an investigation, may offer appropriate social services, and may cause juvenile proceedings to be initiated or the matter referred to the prosecutor for criminal prosecution. IC 31–6–11–11. "Child abuse or neglect" as used in the act is specifically defined to mean a child in need of services as defined by IC

31–6–4–3(a)(1) through (5). IC 31–6–11–2. The pertinent portion of that statute defines a child in need of services as one whose physical or mental condition has been seriously endangered or impaired due to conduct of the child's parent, guardian or custodian or a child who is a victim of one of the sex offenses enumerated in the statute. IC 31–6–4–3(a)(1) through (5).

When a civil tort action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action.

In considering that question our First District in *Bartholomew Cty. Bev. Co., Inc. v. Barco Bev. Corp.* (1988), Ind.App., 524 N.E.2d 353, 356, quoted with approval the rule as stated in 1 C.J.S. *Actions* § 12, that the answer depends upon the intention of the legislature as construed from the provisions of the particular statute; "and if it appears that the duty imposed is merely for the benefit of the public, and the fine or penalty a means of enforcing the duty and punishing a breach thereof, the fine or penalty is exclusive, and a private action cannot be maintained for injury by reason of the breach." *See also Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847.

■ An examination of IC 31–6–11–1 *et seq.* persuades us that the legislature did not intend to confer a private right of action for any breach of the duty to report imposed by the statute.

The legislative purpose is set forth in the first section:

> It is the purpose of this chapter to encourage effective reporting of suspected or known incidents of child abuse or neglect, to provide in each county an effective child protection service to quickly investigate reports of child abuse or neglect, to provide protection for such a child from further abuse or neglect and to provide rehabilitative services for such a child and his parent, guardian or custodian.

A review of the twenty-one sections of the act reveals the primary thrust as establishing child protection services and community protection teams, the contents and handling of their investigations and written reports, and the provision of necessary services to affected children and their families (including removal from a home and/or criminal prosecutions where warranted).

The legislative purpose relative to reports by members of the public is stated as one to *encourage* effective reporting. While the act imposes a duty on any individual to make such reports, [IC 31–6–11–3], only an oral report is called for. IC 31–6–11–4. There is no express indication of any legislative intent to impose civil liability for failure to report. It is, however, made a class B misdemeanor for an individual to knowingly fail to make a report. IC 31–6–11–20. Other provisions dealing with such reports provide civil and criminal immunity to those who make a report and abrogate the rule of privileged communications between husband and wife, health care provider and patient, and school counselor and student as a ground for excluding evidence in a judicial proceeding or failing to report as required. When the provisions of the act are considered as a whole, there is no apparent intent to authorize a civil action for failure of an individual to make the oral report that may be the means of initiating the central procedures contemplated by the act. Furthermore, such an action is not authorized at common law and its maintenance would raise substantial questions of causation since the failure would not in the direct sense be a proximate cause of the injury to the child. It would, we believe, misdirect judicial time and attention from the very real problems of children in need of services in favor of pursuing collateral individuals, who are presumably capable of responding in money damages, on the ground that they knowingly failed to make an oral report. We conclude that was not within the legislative purpose of the act.[1]

---

1. We therefore need not determine whether the particular conduct of these eleven year old boys fell within the definition so as to make Borne a child in need of services, but we are dubious that it did.

It follows that summary judgment in favor of Ms. West and the school, as her employer, must at this juncture be reversed. The summary judgment in favor of Mr. Baumgartner is affirmed.

Reversed in part, affirmed in part. Costs taxed one half to appellants and one half to Ellen West and Northwest Allen County School Corporation.

SULLIVAN, J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The majority opinion too broadly interprets the holding in *Peavler v. Monroe Cty. Bd. of Com'rs* (1988), Ind., 528 N.E.2d 40. While our Supreme Court rejected the traditional ministerial/discretionary test to determine governmental immunity in favor of the planning/operational test, it does not necessarily follow that West's actions were not the result of a conscious balancing of risks and weighing of priorities.

The Court enumerated factors to consider which would normally indicate a finding of immunity. One of the factors regarding the nature of the conduct seems applicable here: "[w]hether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard." West's actions could fall into this category. Further, historically the same type of teacher function decision making has been found to be immune. *See Driscol et al. v. Delphi School Corp.* (1972), 155 Ind.App. 56, 290 N.E.2d 769. It is not apparent that the *Peavler* decision would alter that finding.

Also, the test announced in *Peavler* may suffer from an infirmity similar to that inherent in the former test; that is, the difficulty in determining at what level of policy making does the division between planning and operation commence. It is not inconceivable that West's actions were or were based upon some level of policy making.

For the reasons above I would vote to affirm the trial court.