**C.T., Individually and On Behalf of T.T., a Minor Child, Appellant–Respondent,**

v.

**Sherri GAMMON and Dr. Ronald Beahm, M.D., Appellees–Petitioners.**

**No. 48A04–0911–CV–624.**

Court of Appeals of Indiana.

June 10, 2010.

C.T., Anderson, IN, Appellant Pro Se.

Robert G. Zeigler, T. Graham Dycus, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellee Ronald J. Beahm, M.D.

## OPINION

VAIDIK, Judge.

### Case Summary

C.T., *pro se* on behalf of himself and his minor son T.T., appeals the trial court's entry of summary judgment in favor of Ronald Beahm, M.D. Specifically, C.T. contends that Dr. Beahm, who served as T.T.'s pediatrician and was aware that T.T. was born prematurely and had respiratory

problems, had a duty, pursuant to Indiana's child abuse and neglect reporting statutes, to report to the proper authorities that T.T.'s mother was smoking in T.T.'s presence, which amounted to child abuse or neglect. Because Indiana does not recognize a private right of action for failure to report child abuse or neglect, we affirm the trial court's entry of summary judgment in favor of Dr. Beahm.

### Facts and Procedural History[1]

C.T. ("Father") and S.G. ("Mother") are the biological parents of T.T. On December 6, 1997, T.T. was born prematurely at 28 weeks' gestation at Community Hospital in Anderson. He was then transferred to Riley Hospital for Children in Indianapolis, where he was hospitalized for two and a half months and spent approximately two months on a respirator. Appellee's App. p. 109, 133.[2] T.T. was diagnosed with bronchopulmonary dysplasia. *Id.* at 109.

Dr. Beahm served as T.T.'s pediatrician from 1998 to 2006 in Anderson. In addition, "Dr. Ronald J. Beahm" is listed as T.T.'s physician in his newborn medical records and was "in attendance" at T.T.'s premature delivery at Community Hospital in Anderson. *Id.* at 134. As T.T.'s pediatrician, Dr. Beahm saw him for routine well-baby and well-child check-ups as well as for routine childhood ailments. During this timeframe T.T. suffered respiratory illnesses. *See, e.g., id.* at 113. T.T.'s medical records from Dr. Beahm's office note that T.T. "lives in smoke." *Id.*

At some point Father and Mother, who never married, separated, and Mother, a smoker, received physical custody of T.T. Father complained to the Indiana Department of Child Services ("DCS") that T.T. was the subject of neglect because Mother exposed him to second-hand smoke. Specifically, Father made reports in April 2004 and October 2006. After investigating, the DCS concluded that both reports were unsubstantiated.

In the meantime, Father instituted proceedings in Madison Superior Court because of Mother's exposing T.T. to second-hand smoke. As a result, on December 12, 2005, the trial court issued an order prohibiting Mother from smoking in T.T.'s presence. Then, in early September 2006 the trial court held a hearing on Father's petition for physical custody of T.T. and entered the following order on September 29:

1. [T.T.] is the male child of [Father] and [Mother] born prematurely 12/06/1997.

2. [Mother] is in violation of this Court's Order of 12/12/05, in that [T.T.] is still exposed to smoke.

3. *[T.T.] should be in a smoke free environment according to the recommendation of his doctor, Dr. Ronald Beahm.*

4. According to the U.S. Surgeon General's Report of 06/27/06 "there is no

---

1. We note that C.T.'s Statement of Facts is not supported by page references to the record on appeal or appendix in violation of Indiana Appellate Rule 46(A)(6)(a). In addition, although C.T.'s Statement of Facts includes additional facts not recited here, we note that he relies on facts that either were not designated on summary judgment or were stricken by the trial court. Although *pro se,* C.T. is held to the same standard as trained legal counsel. *See Evans v. State,* 809 N.E.2d 338, 344 (Ind. Ct.App.2004), *trans. denied.*

2. This information comes from hospital reports, which Father designated as part of his motion for summary judgment. Although the trial court struck Father's reply to Dr. Beahm's motion for summary judgment, the court did not strike Father's own motion for summary judgment. Therefore, these facts (and the facts that follow) can properly be used on summary judgment.

risk-free level of second-hand smoke exposure. Only smoke-free environments effect[ive]ly protect non-smokers from second-hand smoke exposure in indoor spaces."

\* \* \* \* \* \*

8. [Father], is able to provide a stable, smoke-free environment for [T.T.]

The COURT therefor[e] finds that the care, custody and control of [T.T.] should be with [Father].

Appellant's App. p. 136–37 (emphasis added).

In August 2006, which was before Father was awarded physical custody of T.T. and before his second complaint to the DCS, Father filed a *pro se* complaint in Madison Circuit Court against Dr. Beahm alleging that Dr. Beahm was negligent for not reporting T.T.'s smoky living conditions to the proper authorities.[3] Father amended the complaint on October 25, 2006, seeking the court to "declare" that Dr. Beahm did not meet the standard of care in his treatment of T.T. *Id.* at 123. Father sought monetary damages, including punitive damages, for mental pain and suffering, monetary losses, agony, the smell of tobacco on T.T., the smell of tobacco transferring onto Fathers clothes, and other assorted expenses. On the following day, October 26, Father filed a *pro se* Proposed Complaint for malpractice with the Indiana Department of Insurance ("IDOI").

In August 2008 Dr. Beahm moved for summary judgment in Madison Circuit Court. Specifically, Dr. Beahm asserted that he "had no duty to [T.T.] to protect him from alleged exposure to environmental tobacco smoke while in the care of his parent." Appellee's App. p. 10. Dr.

Beahm also asserted that there "exists no precedent under Indiana law imposing a duty on a physician to report a child's exposure to second-hand tobacco smoke at home as child abuse." *Id.* at 16. In September 2008 Father filed a reply memorandum to Dr. Beahm's motion for summary judgment which included numerous materials. Dr. Beahm moved to strike Father's reply, and the trial court struck Father's reply in its entirety. *Id.* at 209.

In October 2008 Father filed his own motion for summary judgment against Dr. Beahm and designated numerous items of evidence. *See id.* at 106–07. Dr. Beahm also moved to strike the entirety of Father's motion for summary judgment, memorandum, and designation of evidence, *id.* at 202, but the trial court did not rule on this motion to strike. Accordingly, the evidence included in this designation of evidence is properly before us on appeal. *See id.* at 106–07.

A summary judgment hearing was held in January 2009 before Master Commissioner Joseph Kilmer. Following the hearing, the matter was taken under advisement for several months. Father then requested the appointment of a special judge, and the Indiana Supreme Court appointed Special Judge Thomas Clem in August 2009. In September 2009 Judge Clem entered summary judgment in favor of Dr. Beahm as follows: "The Defendant, Ronald Beahm, M.D., by counsel, has moved for summary judgment on the basis that said Defendant had no duty to protect [T.T.] from alleged exposure to environmental tobacco smoke.... There is no genuine issue as to any material fact, and the Defendant ... is entitled to judgment as a matter of law." *Id.* at 224. Judge

---

**3.** Father also named Mother and the DCS in the complaint. The DCS was later dismissed.

This appeal only concerns Dr. Beahm.

Clem denied Father's motion for summary judgment as follows: "Plaintiff's Motion for Summary Judgment fails to present relevant admissible evidence which demonstrates that, as a matter of law, he is entitled to summary judgment." *Id.* at 227. Father filed a motion to correct errors, which the trial court denied. Father, *pro se,* now appeals.

### Discussion and Decision

Father contends that the trial court erred in entering summary judgment in favor of Dr. Beahm. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *McSwane v. Bloomington Hosp. & Healthcare Sys.,* 916 N.E.2d 906, 909 (Ind.2009). Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). Although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *McSwane,* 916 N.E.2d at 909–10.

■ As an initial procedural matter, we determine that this case is one of medical malpractice, and not ordinary negligence, because it arises out of the special relationship between a doctor and his patient during the course of health care or professional services that were provided or should have been provided by a doctor to his patient. *See* Ind.Code § 34–18–2–18; *see also David M. v. Beverly Hosp.,* 131 Cal. App.4th 1272, 32 Cal.Rptr.3d 649, 655 (2005) ("Accordingly, because defendant doctor's duty to report suspected abuse

arose in the context of providing health care services, plaintiffs allegations necessarily sound in professional negligence"). But *see Lee v. Detroit Med. Ctr.,* 285 Mich. App. 51, 775 N.W.2d 326, 332–334 (2009) (holding that doctor's failure to report suspected abuse sounds in ordinary negligence and not in medical malpractice), *appeal denied.* That is, Dr. Beahm's alleged duty to report Mother arose in the context of providing health care or professional services to T.T.

As a medical malpractice case, ordinarily the case may not be resolved on summary judgment by a trial court until after a complaint has been submitted to a medical review panel and the panel has rendered an opinion. *See* Ind.Code § 34–18–8–4 ("Notwithstanding section 1 of this chapter, and except as provided in sections 5 and 6 of this chapter, an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . .; and (2) an opinion is given by the panel."). However, under Indiana Code section 34–18–11–1, a trial court may preliminarily determine an issue of law before a medical review panel's opinion as follows:

(a) A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, do one (1) or both of the following:

*(1) preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or*

(2) compel discovery in accordance with the Indiana Rules of Procedure.

(b) The court has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel under IC 34–18–10–22(b)(1), IC 34–18–10–22(b)(2), and IC 34–18–10–22(b)(4).

(c) The court has jurisdiction to entertain a motion filed under this chapter only during that time after a proposed complaint is filed with the commissioner under this article but before the medical review panel gives the panel's written opinion under IC 34–18–10–22.

(d) The failure of any party to move for a preliminary determination or to compel discovery under this chapter before the medical review panel gives the panel's written opinion under IC 34–18–10–22 does not constitute the waiver of any affirmative defense or issue of law or fact.

(Emphasis added). Dr. Beahm asked the trial court to determine that he had no duty to report Mother's smoking in T.T.'s presence to the proper authorities. Duty is an issue of law, and, therefore, procedurally the trial court properly handled this matter as a preliminary determination of law under Indiana Code section 34–18–11–1(a)(1). We now proceed to address the substantive claim on appeal.

■ Medical malpractice cases are no different from other kinds of negligence actions regarding what must be proven. *McSwane*, 916 N.E.2d at 910; *Bader v. Johnson*, 732 N.E.2d 1212, 1216–17 (Ind. 2000). The plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2)

a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *McSwane*, 916 N.E.2d at 910; *Bader*, 732 N.E.2d at 1217.

■ Father contends that Dr. Beahm was negligent. Specifically, he argues that because Dr. Beahm was T.T.'s pediatrician and therefore was in a special relationship with him, Dr. Beahm had a duty to report Mother to the proper authorities for exposing the respiratory-challenged T.T. to second-hand smoke, which amounted to child abuse or neglect.[4] Had Dr. Beahm fulfilled this duty in a timely manner, Father alleges, this "would more than likely [have] resulted in [T.T.'s] more expedient removal from his mother's home and placement into [Father's] custody." Appellant's Br. p. 11.

For the basis of Dr. Beahm's duty to report, Father directs us to Indiana Code article 31–33. The purpose of Article 33 is to:

(1) encourage effective reporting of suspected or known incidents of child abuse or neglect;

(2) provide effective child services to quickly investigate reports of child abuse or neglect;

(3) provide protection for an abused or a neglected child from further abuse or neglect;

(4) provide rehabilitative services for an abused or a neglected child and the

---

4. The parties dispute whether exposing a sick child to smoke constitutes child abuse or neglect. Father even designated articles authored by Dr. Beahm in an Anderson newspaper in which he opined that exposing presumably healthy children to smoke constitutes child abuse. Even assuming for purposes of this opinion that Mother smoking in T.T.'s presence constitutes child abuse or neglect and that Dr. Beahm was aware of both the extent of T.T.'s illness and Mother's smoking in T.T.'s presence, the dispositive question in this case is whether Indiana recognizes a private right of action for failure to report child abuse or neglect.

child's parent, guardian, or custodian; and

(5) establish a centralized statewide child abuse registry and an automated child protection system.

Ind.Code § 31–33–1–1. More specifically, Indiana law requires an individual who has reason to believe that a child is a victim of child abuse or neglect to make an immediate oral report to either the department of child services or the local law enforcement agency. *Id.* §§ 31–33–5–1,–4. A person who knowingly fails to make a report commits a Class B misdemeanor. *Id.* § 31–33–22–1. A person who makes such a report is immune from any civil or criminal liability because of doing so; however, immunity will not attach if the person acted maliciously or in bad faith. *Id.* §§ 31–33–6–1,–2. A person making a report that a child may be a victim of child abuse or neglect is presumed to have acted in good faith. *Id.* § 31–33–6–3.

When a civil action is premised upon violation of a duty imposed by statute, the question to be determined is whether the statute confers a private right of action. *See generally Blanck v. Ind. Dep't. of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005). In essence, Father argues that the above-cited reporting statutes create a private right of action against an individual who fails to report that a child may be a victim of child abuse or neglect. *See id.* ("Sometimes the Legislature will be quite explicit in providing that persons with appropriate standing are entitled to go to court and ask for enforcement of a statute's provisions. These provisions are often referred to as 'private rights of action' or 'private causes of action.' ... And where a legislative body does not explicitly provide a private right of action to enforce the provisions of a particular statute, courts are frequently asked to find that the Legislature intended that a private

right of action be implied."). This Court, however, has already addressed this very issue in *Borne ex rel. Borne v. Northwest Allen County School Corp.*, 532 N.E.2d 1196 (Ind.Ct.App.1989), *trans. denied.*

In *Borne*, a special education student was involved in several incidents of sexual exploration with male classmates over a three-year period culminating in an incident on a field trip in the sixth grade. *Id.* at 1198. The student's parents sued, among others, the school's principal, alleging that he failed to report the prior incidents of child abuse to child protection services or law enforcement officials pursuant to the reporting statutes. *Id.* at 1202. The apparent theory was that had the principal reported the previous incidents, the incident in the sixth grade never would have happened. Specifically, we held that an examination of the relevant statutes persuaded us that the legislature did not intend to confer a private right of action for any breach of the duty to report imposed by the reporting statutes. *Id.* at 1203.

> The legislative purpose relative to reports by members of the public is stated as one to encourage effective reporting. While the act imposes a duty on any individual to make such reports ..., only an oral report is called for. IC 31–6–11–4 [repealed, see now Ind.Code §§ 31–33–5–1 & –4]. *There is no express indication of any legislative intent to impose civil liability for failure to report.* It is, however, made a class B misdemeanor for an individual to knowingly fail to make a report. IC 31–6–11–20 [repealed, see now Ind.Code § 31–33–22–1]. Other provisions dealing with such reports provide civil and criminal immunity to those who make a report and abrogate the rule of privileged communications between husband and wife, health care provider and patient, and

school counselor and student as a ground for excluding evidence in a judicial proceeding or failing to report as required. *When the provisions of the act are considered as a whole, there is no apparent intent to authorize a civil action for failure of an individual to make the oral report that may be the means of initiating the central procedures contemplated by the act.* Furthermore, such an action is not authorized at common law and its maintenance would raise substantial questions of causation since the failure would not in the direct sense be a proximate cause of the injury to the child. It would, we believe, misdirect judicial time and attention from the very real problems of children in need of services in favor of pursuing collateral individuals, who are presumably capable of responding in money damages, on the ground that they knowingly failed to make an oral report. We conclude that was not within the legislative purpose of the act.

*Id.* (emphases added); *see also J.A.W. v. Roberts,* 627 N.E.2d 802, 813 (Ind.Ct.App. 1994) ("[O]ur legislature has already taken steps to encourage reporting of child abuse by making it a Class B misdemeanor for a person who has reason to believe such abuse or neglect exists to knowingly fail to report his or her belief to the local child protection service or law enforcement agency. However, like the majority of state legislatures, our legislature has declined to codify a civil cause of action against an adult who knowingly fails to report alleged child abuse.... Absent codification, we are not convinced that extending a civil remedy to a victim of abuse or neglect against all persons who know of child abuse and fail to report child abuse is good public policy. Rather, we agree with the [*Borne* ] majority.") (citation omitted), abrogated in part by *Holt v. Quality Motor Sales, Inc.,* 776 N.E.2d 361 (Ind.Ct.

App.2002), *trans. denied.* Thus, our reporting statutes do not create a civil cause of action for failure to report child abuse or neglect.

The vast majority of states have reached the same conclusion under their reporting statutes. *See Becker v. Mayo Found.,* 737 N.W.2d 200, 208 (Minn.2007) ("The vast majority of courts ... have held that their reporting statutes do not create a civil cause of action."); Child Welfare Information Gateway, *Penalties for Failure to Report and False Reporting of Child Abuse and Neglect: Summary of State Laws* 2 (Dec. 2009), http://www.childwelfare.gov/systemwide/laws_policies/statutes/report. cfm ("In [only] seven States and American Samoa, in addition to any criminal penalties, the reporter may be civilly liable for any damages caused by the failure to report."); Danny R. Veilleux, Annotation, *Validity, Construction, and Application of State Statute Requiring Doctor or Other Person to Report Child Abuse,* 73 A.L.R.4th 782 (1989); 38 Am. Jur. Trials 1, *Professional Liability for Failure to Report Child Abuse* §§ 9, 26–28 (1989); 6 Am. Jur. Proof of Facts 2d 345, *Failure to Report Suspected Case of Child Abuse* § 4 (1975); *see also C.B. v. Bobo,* 659 So.2d 98 (Ala.1995); *McGarrah v. Posig,* 280 Ga. App. 808, 635 S.E.2d 219 (2006); *Doe 1 ex rel. Tanya S. v. N. Cent. Behavioral Health Sys., Inc.,* 352 Ill.App.3d 284, 287 Ill.Dec. 493, 816 N.E.2d 4 (2004); *Becker,* 737 N.W.2d 200; *Doe v. Marion,* 373 S.C. 390, 645 S.E.2d 245 (2007); *Perry v. S.N.,* 973 S.W.2d 301 (Tex.1998); *Barbina v. Curry,* 221 W.Va. 41, 650 S.E.2d 140 (2007).

Because there is not a private right of action for failure to report child abuse or neglect in Indiana, we affirm the trial court's entry of summary judgment in favor of Dr. Beahm.[5]

As a final matter, counsel for Dr. Beahm asks us to award them attorneys' fees and costs for the many hours they have expended "in deciphering and responding to the inappropriate, and at times incoherent and unintelligible, argument contained in [Father's] brief [Father] has continually attempted to use his *pro se* status as an excuse for his disregard for procedural rules." Appellee's Br. p. 16. According to Indiana Appellate Rule 66(E), "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution."

Counsel argue that attorneys' fees and costs are appropriate "given the overall frivolous and harassing nature" of this appeal. Appellee's Br. p. 17. Although Father's adherence to our appellate rules has been far from perfect, he has submitted an appellate brief that substantially complies with our rules. We thus decline to award attorneys' fees and costs to Dr. Beahm's counsel.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

5. We note that Father makes no discernible claim on appeal as to whether Indiana recognizes a common law duty to report child abuse or neglect.