

FILED
Sep 11 2015, 9:10 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kevin L. Likes | Edward L. Murphy, Jr. |
| Likes Law Office | Andrew L. Palmison |
| Auburn, Indiana | Rothberg Logan & Warsco LLP |
| | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kelli Sprunger<br>*(Mother of Alyssa B. Guernsey)*,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>John A. Egli, M.D.,<br>*Appellee-Defendant* | September 11, 2015<br><br>Court of Appeals Case No.<br>44A04-1412-CT-567<br><br>Appeal from the LaGrange Circuit<br>Court<br><br>The Honorable Robert C. Probst,<br>Special Judge<br><br>Trial Court Cause No.<br>44C01-1401-CT-2 |

**Robb, Judge.**

# Case Summary and Issue

[1] In December 2008, thirteen-month-old Alissa Guernsey was placed in foster care with relative caregivers. She died just over three months later from injuries consistent with child abuse. During Guernsey's placement in foster care, John Egli, M.D. ("Dr. Egli"), was Guernsey's primary physician.

[2]     Kelli Sprunger, Guernsey's biological mother, subsequently filed a medical malpractice action against Dr. Egli alleging failure to diagnose and report child abuse. Concluding that Indiana does not recognize a private right of action for failure to report child abuse, the trial court granted summary judgment in favor of Dr. Egli on August 7, 2014.

[3]     Sprunger now appeals, arguing that her claim is premised not on a failure to report, but rather a failure to make a correct diagnosis. We agree with the trial court's conclusion that Sprunger essentially alleges a failure to report child abuse and hold that the characterization of the claim as medical malpractice does not escape the threshold question of whether the reporting statutes confer a private right of action. As we have already determined that there is no private right of action for failure to report child abuse in Indiana, *C.T. v. Gammon*, 928 N.E.2d 847, 853-54 (Ind. Ct. App. 2010), we affirm the trial court's grant of summary judgment in favor of Dr. Egli.

## Facts and Procedural History

[4]     Sprunger left her children in the care of her cousin, Christy Shaffer, in late November or early December 2008. At that time, Guernsey was just over a year old, and the Department of Child Services ("DCS") "already had a case open." Appellant's Appendix at 37.

[5]     On December 16, 2008, the Steuben Circuit Court held an initial hearing on a petition alleging that Guernsey was a Child in Need of Services ("CHINS").

Sprunger denied the allegations, but the juvenile court found that it was in the best interest of Guernsey to remain outside Sprunger's home. Accordingly, the juvenile court ordered that Guernsey remain in the care of Shaffer under the supervision of the DCS.

[6]     During Guernsey's placement with Shaffer, Dr. Egli was Guernsey's primary physician. Dr. Egli saw Guernsey several times between December 2008 and March 2009. During Guersney's first appointment on December 10, 2008, Dr. Egli conducted a routine physical examination and determined that she was "within normal limits." *Id.* at 80. In the months to follow, Guernsey experienced lacerations, bruising, hair loss, and a fractured arm. Dr. Egli informed the DCS of her condition but also stated that "he did not suspect abuse." *Id.* at 85. Dr. Egli was concerned that there may have been a "medical reason" for the bruising. *Id.* at 80.

[7]     On March 3, 2009, Dr. Egli referred Guernsey to a pediatric oncologist at Riley Hospital for Children. She was seen at Riley on March 5, 2009. The oncologist ordered tests for coagulation disorders and leukemia, but all of the test results were normal. The oncologist noted Guernsey's "complex social situation" and believed that the injuries were likely caused by "the banging of her head against the crib while she is asleep." *Id.* at 111. The oncologist had no recommendations for further testing or treatment and referred Guernsey back to Dr. Egli.

[8] On March 17, 2009, Sprunger admitted the allegations in the CHINS petition, and Guernsey was adjudicated a CHINS "due to mother's substance abuse problem which adversely impacted her parenting history." *Id.* at 120. The court again found that it was in the best interest of Guernsey to remain in the care of Shaffer and entered an order to that effect. Less than two weeks later, on March 29, 2009, Guernsey was found dead in Shaffer's home. Post-mortem pictures showed extensive facial bruising, and the autopsy revealed injuries consistent with blunt force trauma to the head. The coroner ruled the death a homicide.

[9] Sprunger subsequently filed a medical malpractice action against Dr. Egli for failure to diagnose and report child abuse. As required by the Medical Malpractice Act, Sprunger first filed a proposed complaint with the Department of Insurance. *See* Ind. Code § 34-18-8-4. The medical review panel issued its opinion on October 15, 2013, unanimously deciding that the evidence submitted did not support the conclusion that Dr. Egli failed to meet the appropriate standard of care.

[10] Notwithstanding the panel's opinion, Sprunger filed a complaint for medical malpractice in the LaGrange Circuit Court on January 15, 2014. The complaint alleged in relevant part:

> 4. During the time that defendant treated Alissa B. Guernsey there was [sic] clear indications that the child was being abused by other individuals.
>
> 5. The defendant failed to report the abuse.

6. The defendant provided information that may have been used by the [DCS] in deciding to leave the child in the care and custody of the individual who ultimately killed the child.

7. The diagnosis's [sic] and treatment provided by the defendant failed [sic] below the applicable standard of care.

8. As a result of the defendant's actions and inactions the child, Alissa B. Guernsey was not removed from the home of the individual who ultimately killed her.

Appellant's App. at 13-14.

Dr. Egli moved for summary judgment on April 15, 2014. The motion asserted five arguments in favor of summary judgment, one of which is relevant to this appeal: "The Plaintiffs' theory of liability against Dr. Egli is that Dr. Egli allegedly failed to report child abuse; Indiana does not recognize a private, civil action for failure to report child abuse." *Id.* at 15.[1] In response, Sprunger

---

[1] In the alternative, Dr. Egli argues that Sprunger is barred from recovering because she was "contributorily negligent as a matter of law in a manner that contributed to [Guernsey]'s death." Brief of Appellee at 20. Dr. Egli contends: "It is undisputed that Sprunger placed [Guernsey] in a position to be abused by Shaffer when she abandoned her resulting in the court finding that [Guernsey] was a CHINS." *Id.* We find this argument inappropriate and note that the purpose of a CHINS adjudication is to protect children, not establish parental culpability. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Sprunger admitted that she was suffering from substance abuse and left her children in the care of a family member because she recognized that she herself was not capable of caring for them at that time. Thereafter the juvenile court approved Guernsey's placement with Shaffer. Foster care is supposed to provide a safe, stable, and nurturing environment for children who can no longer remain in their homes. *About Foster Care*, INDIANA DEPARTMENT OF CHILD SERVICES, http://www.in.gov/dcs/2983.htm (last visited Aug. 12, 2015). The system failed Guernsey, and the suggestion that this failure was somehow Sprunger's fault is tantamount to victim blaming.

argued that her claim was premised not on a failure to report but rather a failure to make a correct diagnosis. Sprunger insisted:

> [H]ad the defendant correctly diagnosed the abuse as required by the applicable standard of care additional actions would have been taken as required by State Law to remove the child from the foreseeable abusive situation. The failure of the defendant to meet the appropriate standard of care prevented those actions from occurring and subsequently led to the death of the child . . . .

*Id.* at 129.

[12] The trial court concluded that Sprunger was essentially alleging a failure to report child abuse, a cause of action not recognized in Indiana. On this basis, the trial court granted summary judgment in favor of Dr. Egli on August 7, 2014. This appeal followed.

# Discussion and Decision

## I. Standard of Review

[13] Sprunger challenges the trial court's grant of summary judgment in favor of Dr. Egli. We review a trial court's grant of summary judgment de novo. *Miller v. Dobbs*, 991 N.E.2d 562, 564 (Ind. 2013). We affirm if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)).

# II. No Private Right of Action for Failure to Report Child Abuse

[14]     An individual who has "reason to believe" that a child is a victim of abuse or neglect has a statutory duty to make an immediate report to either the DCS or local law enforcement. Ind. Code §§ 31-33-5-1, -4. "Reason to believe," for the purpose of the reporting statutes, "means evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected." Ind. Code § 31-9-2-101. Actual knowledge is not required. *Lebo v. State*, 977 N.E.2d 1031, 1038-39 (Ind. Ct. App. 2012). Nor does "reason to believe" call for a high level of certainty. *Smith v. State*, 8 N.E.3d 668, 683 n.18 (Ind. 2014) (describing "reason to believe" as involving something less than probable cause). A person who is mistaken about the nature of a child's injuries but had sufficient reason to believe that abuse was occurring violates the duty to report if no report is made. *See id.* at 683. As our supreme court recently stated, the statutory scheme is designed to "err on the side of *over*reporting suspected child abuse or neglect." *Id.* (emphasis in original).

[15]     When a civil tort action is premised upon violation of a duty imposed by statute, the initial question is whether the statute confers a private right of action. *Borne ex rel. Borne v. Nw. Allen Cnty. Sch. Corp.*, 532 N.E.2d 1196, 1203 (Ind. Ct. App. 1989), *trans. denied*. Where a statute does not explicitly provide a private right of action to enforce its provisions, courts are frequently asked to find that the legislature intended that a private right of action be implied.

*Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 509 (Ind. 2005). Like the majority of states, Indiana does not recognize a private right of action for failure to report abuse. *C.T.*, 928 N.E.2d at 854. Our reporting statutes do not explicitly provide a private right of action, and we have previously held that the legislature did not intend that a private right of action be implied. *Id.* at 853-54 (citing *Borne*, 532 N.E.2d at 1203).[2]

[16] Sprunger agrees that Indiana does not recognize a private right of action for failure to report child abuse and argues that the trial court misconstrued the complaint. Sprunger contends:

> Egli's conduct that gives rise to Sprunger's claim is his failure to diagnosis [sic] the abuse not his failure to report the abuse. . . . [The] complaint is based on a claim of negligence under the Medical Malpractice Act and not a request to bring a private cause of action based on Egli's failure to report the abuse.

Appellant's Brief at 11-12.

[17] First, we agree this case is one of medical malpractice, as it arises out of the special relationship between a doctor and his patient during the course of health care services that were provided by the doctor. *See C.T.*, 928 N.E.2d at 851. We disagree, however, that predicating the claim on medical malpractice necessarily transforms the claim into something other than an attempt to assert

---

[2] The General Assembly has encouraged reporting by imposing criminal penalties for failing to report. An individual who knowingly fails to report child abuse commits a Class B misdemeanor. Ind. Code § 31-33-22-1.

a private right of action for failure to report abuse. *See F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 143 (Ind. 2013) (Rush, C.J., concurring in part and dissenting in part) ("[N]o matter whether plaintiffs predicate their claim upon a negligence theory or a freestanding private right of action, a court must still determine the larger question of whether the Legislature intended to hold the defendant civilly liable.").

[18] We addressed a similar claim in *C.T.*, 928 N.E.2d 847. In *C.T.*, Father filed a medical malpractice action against his son's doctor for the doctor's failure to report the son's exposure to secondhand smoke while in Mother's custody. Father alleged that the doctor was negligent and did not meet the standard of care, as the child had been born prematurely and suffered from respiratory illnesses. Medical records showed that the doctor had noted the child's exposure, but the doctor disputed whether a child's exposure to secondhand smoke constitutes child abuse triggering a duty to report. Father was essentially arguing that the doctor failed to classify the exposure as child abuse and that had the doctor reported the situation to the DCS, "more expedient removal from his mother's home" would have resulted. *Id.* at 852. We determined that the "dispositive question" in the case was whether Indiana recognizes a private right of action for failure to report child abuse. *Id.* at 852 n.4. We held that Indiana does not and affirmed the trial court's entry of summary judgment in favor of the doctor.

[19] In the present case, we agree with the trial court's conclusion that Sprunger is essentially alleging a failure to report child abuse. The duty to report is

triggered by having "reason to believe" that a child is a victim of abuse. Ind. Code § 31-33-5-1. Dr. Egli had knowledge of Guernsey's medical condition but did not attribute her injuries to abuse. Assuming Dr. Egli had sufficient reason to believe that Guernsey was a victim of abuse, as Sprunger contends, Sprunger's claim rests on more than a misdiagnosis of the injuries. It inescapably rests on the additional premise that had the misdiagnosis not occurred, Dr. Egli would have reported the child abuse pursuant to the mandatory reporting statutes. Sprunger contends that "the claim [is] based on the sole allegation of medical malpractice by Egli for failing to diagnose the abuse," Appellant's Br. at 10, but Sprunger's complaint, designation of evidence, and response in opposition to summary judgment allege both a failure to diagnose abuse and a failure to report. Sprunger's brief on appeal concludes that "[h]ad Egli correctly diagnosed the child abuse, he would have reported the matter to [the DCS family case manager] who has a statutory duty to immediately remove the child from the dangerous situation and her subsequent fatal beating." *Id.* at 6. As Sprunger herself demonstrates, Dr. Egli's alleged failure to report the abuse is logically inseparable from his alleged failure to diagnose it.

# Conclusion

[20] Because there is no private right of action for failure to report child abuse in Indiana, we must affirm the trial court's grant of summary judgment in favor of Dr. Egli.

Affirmed.

May, J., and Mathias, J., concur.