VAIDIK, Chief Judge,
dissenting.
[21] I respectfully dissent. Although the majority left “for another day” the issue of whether Indiana Code section 31-33-18-2 creates a private right of action when DCS fails to protect the identity of a person who reports child abuse or neglect, I believe that this issue must be addressed and that the legislature did’not intend to create a private right of action. And because there is no private right of action under the statute, there is no special relationship between DCS and a person who reports child abuse or neglect when that DCS employee essentially reiterates the requirements of the statute to the reporter. Put differently, no special relationship was created when Doe called the DCS hotline and was told by the DCS employee that his information was confidential, because, the DCS employee’s response was nothing more than a' statement of what Section 31-38-18-2 requires. I would therefore affirm the trial court’s grant of summary judgment in favor of DCS.
[22] I first note, as the majority recognizes, that Doe does not argue that there is a common-law duty of confidentiality between DCS and those who report child abuse or neglect. See op. at 617-18. Indeed, with the exception of the attorney-client privilege, there are no common-law privileges in Indiana. See, e.g., State v. Int’l Bus. Machs. Corp., 964 N.E.2d 206, 209-10 (Ind.2012) (noting that in Indiana privileges are statutory in nature). The Indiana General Assembly, however, has enacted a comprehensive statutory scheme governing the reporting and investigation of child abuse or neglect, which includes confidentiality provisions. The scheme’s purpose is to:
(1) encourage effective reporting of suspected or known incidents of child abuse or neglect;
(2) provide effective child services to quickly investigate reports of child abuse or neglect;
(3) provide protection for an abused or a neglected child from further abuse or neglect;
*619 (4) provide rehabilitative services for an abused or a neglected child and the child’s parent, guardian, or custodian; and
(5) establish a centralized statewide child abuse registry and an automated child protection system.
Ind.Code § 31-33-1-1. As part of this scheme, an individual who has reason to believe that a child is a victim of child abuse or neglect has a duty to immediately make a report to either DCS or local law enforcement. Ind.Code §§ 31-33-5-1, -4. The statutes presume that a report is made in good faith and-immunize from civil or criminal liability the person who made the report. Ind.Code § 31-33-6-1, -3; see also Smith v. State, 8 N.E.3d 668, 683 (Ind.2014)- (explaining that this statutory scheme is designed “to err on the side of over reporting suspected child abuse or neglect”); reh’g denied. Although the reporter is immune from civil and criminal liability, a person who fails to make a report as required by Section 31-33-5-1 commits a Class -B misdemeanor. Ind. Code § 31-33-22-l(a).
[23] This statutory scheme also ád-dresses confidentiality. Indiana Code section 31-33-7-4 provides that DCS “shall make a written report” of a child who may be a victim of child abuse or neglect within forty-eight hours of receiving the oral report required of individuals by Section 31-33-5-4. The statute also lists the requirements of the written reports, including “[t]he source of the report.” Ind.Code § 31-33-7-4(b)(5). These reports are confidential. See Ind.Code § 31-33-18-1. Section 31-33-18-2 lists approximately twenty-five groups of people to whom such reports may be made available, including police, prosecutors, and doctors. Reports may be made available to other people too, provided that the reporter’s -identity is protected. For example, Section 31-33-18-2(8) provides that the reports shall be made availablé to the parent, -guardian, custodian, or other person responsible for the welfare of the child named- in the report; however, the identity of the reporter must be protected. Likewise, Section 31-33-18-2(14) provides that the reports shall be made available to the “person about whom a report has been made”; however, the identity of a person reporting known or suspected child abuse or neglect must be protected. A public employee or official who knowingly or intentionally discloses information classified as confidential by state statute commits a Class A infraction. Ind.Code § 5-14-3~10(a). In addition, the public employee may be disciplined. I.-C. § 5-14-3-10(b).
[24]- With this statutory backdrop in mind, I address whether Indiana Code section 31-33-18-2 creates a private right of action. Sometimes the legislature explicitly provides that a private citizen" has a right to sue when'a statute is'violated. Blanch v. Ind. Dep’t of Corr., 829 N.E.2d 505, 509 (Ind.2005); see also State Bd. of Tax Comm’rs v. Town of St. John, 751 N.E.2d 657, 661 (Ind.2001) (giving numerous examples of where the legislature has explicitly-provided a private right of action). But when the legislature has not explicitly provided a private right of action to enforce the provisions of a statute, courts are frequently asked to find that the legislature intended that a private right of action be implied. Blanch, 829 N.E.2d at 509. In order to decipher legislative intent in these circumstances, the general rule is that a private right of action will not be inferred where a statute (1) is designed to protect the public in general and (2) contains a comprehensive enforcement mechanism. LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1260 (Ind.2000); Blanck, 829 N.E.2d at 509; see also Borne by Borne v. Nw. Allen Cnty. Sch. Corp., 532 N.E.2d 1196, 1203 (Ind.Ct.App.1989) *620 (“[I]f it appears that the duty imposed is merely for the benefit of the public, and the fine or penalty a means of enforcing the duty and punishing a breach thereof, the fine or penalty is exclusive, and a private action cannot be maintained for injury by reason of the breach.” (quotation omitted)), trans. denied. “However, even if a statute incidentally benefits individuals while furthering more general public goals, this ‘does not alone support the finding of a private cause of action.’ ” Lockett v. Planned Parenthood of Ind., Inc., 42 N.E.3d 119, 128 (Ind.Ct.App.2015), reh’g denied, trans. denied; see also F.D. v. Ind. Dep’t of Child Servs., 1 N.E.3d 131, 143 (Ind.2013) (“But even where a duty benefits an individual, we will not infer a private right of action unless that appears to be the Legislature’s intent.”) (Rush, J., concurring in part and dissenting in part). As then-Justice Rush pointed out in F.D., “Indiana courts have rarely concluded the Legislature intended to confer a private right of action.” F.D., 1 N.E.3d at 143 (Rush, J., concurring in part and dissenting in part).
[25] I do not believe that the legislature intended that a private right of action be implied here. The statutory scheme is designed to protect children, and it accomplishes this by encouraging effective reporting by the public and then providing for the quick investigation of those reports. See I.C. § 31-33-1-1; Borne, 532 N.E.2d at 1203 (“The legislative purpose relative to reports by members of the public is stated as one to encourage effective reporting.”). The purpose of the confidentiality requirement is to encourage reporting — not to protect against the harm that might occur when a reporter’s identity is revealed. Moreover, the statute contains no civil-enforcement provisions, and the legislature has provided that public employees or officials who disclose confidential information are subject to a Class A infraction. See Americanos v. State, 728 N.E.2d 895, 898 (Ind.Ct.App.2000) (explaining that the presence of a provision providing for a criminal penalty “impliedly reveals the legislature’s intent not to provide a civil remedy”), trans. denied.
[26] In addition, this Court has already determined that victims of child abuse or neglect do not have a private right of action against people who fail to report the child abuse or neglect. See Sprunger v. Egli, 44 N.E.3d 690, 693 (Ind.Ct.App.2015); C.T. v. Gammon, 928 N.E.2d 847 (Ind.Ct.App.2010). Accordingly, if victims of child abuse or neglect do not have a private right of action under this statutory scheme, then it logically follows that reporters of child abuse or neglect should not either. I therefore conclude that the legislature did not intend to create a private right of action when DCS violates Section 31-33-18-2’s confidentiality requirement.
[27] Also, I disagree with the majority’s conclusion that “DCS owed Doe a private duty based on the common law.” Op. at 616. First, I doubt whether the test in Mullin even applies to this situation because it appears that the test is geared toward the provision of “rescue services.” See Mullin v. Municipal City of South Bend, 639 N.E.2d 278, 284-85 (Ind.1994) (“[W]here the governmental entity is aware of the plight of a particular individual and leads that person to'believe that governmental rescue services will be used, ■and the individual detrimentally relies on that promise, it would be unfair to leave that individual worse off than if the individual had not sought assistance from the government at all.” (emphasis added)). But even if the test applied here, I do not believe that a special relationship was created when Doe called the DCS hotline and the DCS employee told Doe the following about his name and phone number: “Well, it’s confidential. Nobody will find out.” *621 Appellants’ App. p. 44. The DCS employee’s response to Doe was nothing more than a statement of what Section 31 — 33— 18-2 requires. To allow a common-law claim in these circumstances would provide an end-run around the legislature’s intent that Section 31-88-18-2 does not create a private right of action when DCS fails to protect a reporter’s identity.
[28] I would therefore affirm the trial court’s grant of summary judgment in favor of DCS.