David, J.,
concurring in part, dissenting in part
I agree with the majority that John Doe does not have a private light of action under the statute. However, I disagree with the majority’s conclusion that he also does not have a common-law negligence claim. I believe under Webb, John may bring a common-law negligence claim.[1] Accordingly, I would reverse the trial court’s entry of summary judgment for DCS and remand for further proceedings.
In order .to determine whether a duty is owed at common law, three factors must be balanced: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991). This three-part balancing test articulated in Webb is a useful tool in determining whether a *208 duty exists in those instances where the element of duty has not already been declared or otherwise articulated. N. Indiana Pub. Serv. Co. v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003). In Goodwin v. Yeakle’s Sports Bar & Grill, Inc., we modified the foreseeability component of Webb and held that “for purposes of determining whether an act is foreseeable in the context of duty, we assess whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.” 62 N.E.3d 384, 392 (Ind. 2016) (internal citation omitted).
Although the majority found otherwise, I believe all three factors weigh in favor of John, not only foreseeability. I believe public policy strongly supports keeping John’s information confidential, to protect both the public and, incidentally, the reporting source. If the identity of the reporting source is not protected, this may chill reporters from coming forward at all. This is true despite the statutory mandate for those who have reason to suspect child abuse or neglect to come forward. Indeed, John stated in his deposition that if he were to see child abuse or neglect in thé future, he “[doesn’t] think [he]- could call [DCS] again.” (Appellant’s App. at 46.) Thus, there is strong public policy supporting maintaining confidentiality for the reporting source because the goal is to encourage reporting and thereby, protect children.
Whether a special relationship exists between John and DCS is perhaps the crux of the matter. This is a fact-sensitive determination that depends on the level of interaction or dependency between the parties that surpasses what is common or usual. J.A.W. v. Roberts, 627 N.E.2d 802, 810 (Ind. Ct. App. 1994), abrogated on other grounds.
Here, John called DCS to report that he suspected that several neighborhood children were being abused and/or neglected. When John was about to end the call, the DCS employee asked John to provide his name and phone number. John was hesitant to do so. He stated that he did not want anyone to know he was calling. The DCS employee then told John that his information was confidential and promised him that “nobody will find out.” John then gave his information, relying on the DCS employee’s assurance that his information would not get out. I construe DCS’ promise that “nobody will find out” as an explicit assurance that DCS would act on John’s behalf. John justifiably depended,[2] upon the DCS employee’s promise to his detriment. - • ■
DCS makes several ’arguments in an effort to recharacterize its interaction with John and argue no special relationship was created, but I do not find them to be persuasive. First, DCS -argues that it was not unreasonable to request this information from John and that John was not coerced. I agree.[3] However, it is likely John would not have provided his name had he known his information would be made public. He relied on DCS’ assurance that his information would not get out.
*209 Second, DCS argues, and the majority found, that the DCS employee only, told John what the statute requires and thus, no special relationship was created. However, DCS did more than just recite the statute. The majority cites Yost and Lanni in support of its position that merely communicating a rule is not enough to create a special relationship. However, in those cases the defendants did not make any extra or explicit promise to plaintiffs themselves. In Yost, plaintiff sought to hold a school liable for injuries he suffered during a hazing event because the school had disseminated an anti-hazing policy. That case would be more analogous, and- therefore, more applicable to this ease if the plaintiff in Yost had been hesitant to join the fraternity until someone from the school assured him personally that he would not get hurt. Similarly, the plaintiff in Lanni would be in a different position had he been hesitant to sit in his seat at the fencing match until someone from the NCAA assured him that he would be' safe. But in both Yost and Lanni there was no extra or explicit promise made to those plaintiffs beyond the protection afforded by the rule.
Here, John would be in the same position as the plaintiffs in Yost and Lanni, had he given his information without hesitation or if the DCS employee simply made reference to the statutory requirement that his information be kept confidential without the added promise of “[n]o-body will find out.” In that case, John would not be able to establish a common-law duty like the plaintiffs in those cases. However, I believe the extra, explicit and specific assurance that no one would find out (which is more than what the statute promises) coupled with John’s expressed hesitation to provide his information, creates a special relationship between the parties. I believe this added promise to John is not a mere paraphrasing of the statute in light of the circumstances.
Third, DCS argues, and the majority agrees, that because victims of child abuse have no private cause of action, neither do reporters of child abuse. Admittedly, at first blush, this seems like a compelling argument. However, in cases holding there is no private cause of action for victims, the courts did not apply the Webb test to the facts of those cases. Instead, the arguments were focused upon whether the statute provided a private cause of action. See, e.g., Borne ex rel. Borne, 532 N.E.2d at 1203 (“An examination of I.C. 31-6-11-1 et seq. persuades us that the legislature did not intend to confer a private right of action for any breach of the duty to report imposed by the statute”); Sprunger v. Egli, 44 N.E.3d 690, 691 (Ind. Ct. App. 2015) (addressing the “threshold question of whether the reporting statutes confer a private right of action”). Additionally, in those cases, unlike this one, the would-be reporters did not make any specific or added promise to the parents above what the statute requires. Instead, only the statute required the potential reporters to step forward. Here, the DCS employee was required by statute to keep John’s information confidential and she also promised explicitly that “nobody will find out.” It is this extra promise that is beyond the statute that gives rise to the common-law duty in this case. She could have told John that they would do théir best but that there were no guarantees his information would not be revealed, that she could not give legal advice or that he was required to report in any case. She could have directed him to or referred to’the statute. She could have said any number of things. But instead, she promised him nobody would find out. John then disclosed his identity.
Similarly, as for DCS’ argument that allowing a common-law claim to proceed in this case would be an “end run” around *210 the statute, I disagree. When the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1123 (Ind. 2010) (internal citation omitted); Bartrom v. Adjustment Bureau, Inc., 618 N.E.2d 1, 10 (Ind. 1993) (internal citation omitted). In cases of doubt, a statute is construed as not changing the common law. Bartrom, 618 N.E.2d at 10. Here, the statute at issue, by its plain language, is not meant to foreclose or even address the right of a reporter of suspected child abuse or neglect to bring a negligence action. Instead, the focus of the statute is to set forth guidelines for how reports of child abuse and neglect are to be maintained and kept and who is entitled to access what information. Thus, it does not seem the statute was meant to foreclose a common-law negligence action.
Further, there are situations where the statute provides the only basis for recovery (for instance, Borne and Sprunger discussed above where the claims brought were premised upon violation of the statute only); this is not one of them. Even though John has no private right of action pursuant to the statute, this does not foreclose his common-law claim. As discussed above, the Webb test is employed in negligence cases to determine whether there is a common-law duty of care when no other test has been articulated. See Sharp, 790 N.E.2d at 465. In balancing the Webb factors, I believe John’s interaction with the DCS employee in this case was enough to establish a special relationship because John relied upon DCS’ promise that “[n]o-body will find out.” I agree with the majority that the harm to John was foreseeable. I believe public policy strongly supports keeping confidential the information of reporters of suspected child abuse or neglect. I also note that even if we held that DCS owed John a duty as a matter of law such that his common-law claim survives summary judgment, John would still have to prove the other elements of his negligence claim, including proximate cause and damages. See Goodwin, 62 N.E.3d at 386.
Finally, allowing John’s common-law claim to proceed is consistent with Article 1, Section 12 of our Constitution and our summary judgment standard. Article 1, Section 12 provides in relevant part: “All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.” And in Hughley v. State, this Court acknowledged that: “Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.” 15 N.E.3d 1000, 1004 (Ind. 2014). While I acknowledge that this case involves a question of law rather than an issue of fact, allowing the claim to proceed is consistent with our State’s constitutional mandate that plaintiffs may seek a remedy and our practice of letting cases proceed to trial. I think this is particularly important in a case like this where John relied upon a promise made by a government actor in response to his reluctance to provide information to the State, fearing consequences for himself and his family. I believe dismissing his claim on summary judgment might send a message that government actors can make false promises in an effort to achieve a desired result and not be held legally accountable when harm comes to the promisee.
For all the reasons discussed above, I would reverse the trial court and let John have his day in court.

. The'majority repeatedly states that there is no common-law duty of confidentiality. I don’t disagree. However, I believe that in this case, DCS had a duty to John pursuant to the Webb test.

. The majority states that Indiana common law already provides detrimental reliance theories and-that they do not apply here. However, when determining whether there is a special relationship for purposes of the Webb test, which is separate and apart from the detrimental reliance test, dependency between the parties is considered. See Roberts, 627 N.E.2d at 810. Further, as discussed herein, I disagree with the majority's premise that DCS did not engage in a specific undertaking when it promised John that no one would find out. These facts are not the same as those in Yost and Lanni. Nevertheless, I think that Webb alone gets us to.a finding that John has a common-law negligence claim.

. I am not suggesting that John would have a claim for actual or constructive fraud here.