ALTICE, Judge.
Case Summary
[1] John Doe # 1 (Doe) and his family, wife — Jane Doe # 1, two young adult sons — John Doe #2 and John Doe #3, and minor daughter — Jane Doe # 2, filed a civil action against the Indiana Department of Child Services (DCS) alleging negligence in failing to protect Doe’s identity as the reporting source of suspected child neglect. Although acknowledging that the disclosure violated Ind. Code § 31-33-18-2, DCS filed a motion for summary judgment arguing that the statute did not provide for a private right of action. The trial court granted summary judgment in favor of DCS and dismissed the action with prejudice. On appeal, the Does argue that summary judgment was improperly granted because DCS owed Doe a duty to maintain confidentiality under both the statute and common law.
[2] We reverse and remand.
Facts & Procedural History[1]
[3] The Does live in the small town of Oolitic and have lived at the same address for about ten years.[2] They are actively involved in their church, and Doe drives a church bus that regularly takes children in the neighborhood to church events. As a result of his involvement with many of these children, as well as incidents he witnessed in the neighborhood, Doe came to believe that children in various homes were being neglected. In late June 2013, Doe spoke to his wife about his concerns, which she shared, and she reluctantly agreed that Doe should make a report to DCS.
[4] Doe called the DCS hotline to report his suspicions that children in five homes on his street were in need of services due to dangerous living situations. Doe believed the adult subjects of his report were involved in drugs or other criminal activities and were associated with serious and violent criminals. When he was about to end the call, the DCS employee asked for his name and phone number. Doe expressed reluctance and indicated that he did not want anyone to know that he had called. The employee responded that the information was confidential and nobody would find out that he made the report. Doe then agreed to give his first name and phone number, but not his last name. Of course, DCS also had the name of the street on which he lived.
*615 [5] About a week later, on July 3, 2013, Doe was confronted in his front yard by Heather Ditton, who lived across the street and was one of the neighbors Doe reported. While screaming and yelling obscenities, Ditton angrily accused Doe of calling DCS. Ditton had in her possession an unredacted copy of the DCS report, which identified Doe as the reporting source. Other neighbors quickly became aware of the report Doe made. Upon realizing the report was not kept confidential, Doe felt like “somebody ripped [his] heart out.” Appellants’ Appendix at 46.
[6] From that point on, the Doe family no longer felt comfortable outside their house. They wanted to relocate but could not afford to move. Doe indicated that he was “stared at, glared at, mooned, flipped off, yelled at, you know, every day, forever,” Id. at 45. His daughter, Jane Doe #2, was bullied by other children. Both Doe and his wife missed work due to stress and lack of sleep. Although not present for the initial confrontation with Ditton, Doe’s wife was screamed at and threatened by Ditton on subsequent occasions. For example, Dittpn threatened that she was going to “kick [Jane Doe # l’s] ass” and “cut that smirky grin off [her] face”. Id. at 65.
[7] On April 4, 2014, the Does filed a complaint for damages against- DCS. The complaint alleged that DCS was negligent in failing to protect Doe’s identity; DCS filed for summary judgment on March 11, 2015, arguing that the Does had no private right of action to bring a claim for violation of I.C. § 31-33-18-2.[3] The Does responded to the motion for summary judgment and argued that DCS owed a duty under the statute and common law. Following a hearing, the trial court summarily granted summary judgment in favor of DCS on May 28,2015. The Does now appeal.
Standard of Review
[8] On appeal, we apply the same standard applicable to the trial court: summary judgment may be granted only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C); Mangold ex rel. Mangold v. Ind. Dep’t of Natural Res., 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences are construed in favor of the non-moving party. Mangold, 756 N.E,2d at 973. Although summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist, our Supreme Court has recognized that it is also a blunt instrument that prevents a party from having his or her day in court. See Hughley v. State, 15 N.E.3d 1000, 1003 (Ind.2014).
[9] Summary judgment is appropriate ■ when the undisputed material evidence negates at least one element. of a claim. Estate of Mintz v. Connecticut Gen. Life Ins. Co., 905 N.E.2d 994, 998 (Ind.2009). In negligence cases, the determination of whether a duty exists is generally a question of law. Rhodes v. Wright, 805 N.E.2d 382, 386 (Ind.2004). The existence of a duty, however, may depend on underlying facts that require resolution by the trier of fact. Id.
Discussion & Decision
[10] The parties present us with, an issue of first impression: whether I.C. § 31-33-18-2 confers a private right of action for a violation of DCS’s statutory duty to protect a reporter’s identity. I.C. *616 § 31-33-18-2 provides in relevant part that reports shall be made available to:
(8) Each parent, guardian, custodian, or other person responsible for the welfare of a child named in a report or record ... with protection for the identity of reporters and other individuals.
* ⅜ ⅝ ⅜ sfc
(14) A person about whom a report has been made, with protection for the identity of.
(A) any person reporting knoum or suspected child abuse or neglect, and
(B) any other person if the person or agency making the information available finds that disclosure of the information would be likely to endanger the life or safety of the person.
⅜ ⅝ ⅝ ⅜
(Emphases supplied.) Thus, the statute requires redaction of DCS reports before they are provided to certain individuals, like Ditton. DCS does not dispute this and acknowledges that its own policy manual and written code of conduct require confidentiality. While the disclosure of Doe’s identity clearly violated the statute, DCS argues that the statute does not confer a private right of action.
[11] Not every breach of a statutory duty provides plaintiffs with a right of action. The legislature must have intended the violation to give rise to a negligence action. Where, as in this case, the statute does not expressly provide for a private right of action to enforce the statutory duty, we look to whether the legislature intended for a private right of action to be implied. See Blanck v. Ind. Dep’t of Correction, 829 N.E.2d 505, 509 (Ind.2005). A private cause of action may be inferred where a statute imposes a duty for a particular individual’s benefit but will not be where the legislature imposes a duty for the public’s benefit. Id. But even where a duty benefits an individual, we will not infer a private right of action where it is clear that the legislature did not intend one. See id. at 510. “[T]he fact that an individual suffers a distinct injury unique from the general public is not determinative.” Americanos v. State, 728 N.E.2d 895, 897 (Ind.Ct.App.2000), trans. denied. “Rather, it is legislative intent, as construed from the provisions of the statute, which determines whether a private cause of action is available.” Id.
[12] The parties dispute whether the legislature intended to hold DCS civilly liable for damages resulting from the violation of I.C. § 31-33-18-2’s confidentiality requirements. We leave this issue for another day because on the specific facts before us, we conclude that DCS owed Doe a private duty based on the common law.
[13] The existence of a duty is a question of law for the court. Mullin v. Mun. City of South Bend, 639 N.E.2d 278, 285 (Ind.1994). In determining whether a duty exists, three factors must be balanced: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind.1991). Where a plaintiff seeks recovery against a governmental entity for negligence, the relationship between the parties must be one that gives rise to a private duty owed to a particular individual. Mullin, 639 N.E.2d at 285 (addressing the distinction between a duty owed to the public at large and a duty owed to a particular individual).
[14] In the context of a governmental entity’s dispatch of emergency services, our Supreme Court has applied the Webb factors and set out three elements for imposition of a private duty: (1) an explicit assurance by the municipality (through promises or actions) that it would act on behalf of the injured party; (2) knowledge *617 on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party. Koher v. Dial, 653 N.E.2d 524, 526 (Ind.Ct.App.1995) (private duty found where 911 dispatcher promised caller that an ambulance would be dispatched immediately but no dispatch followed), tram, denied; Mullin, 639 N.E.2d at 283-85 (adopting test but finding no private duty where neighbor called 911 about fire at plaintiffs’ house and no assurance was made that an ambulance would be dispatched with the fire trucks and there was no evidence of detrimental reliance by plaintiffs). Notably, this test does not require direct contact between the municipality’s agent and the injured party. Mullin, 639 N.E.2d at 284.
[15] In establishing the test for imposition of a private duty on a governmental defendant, the Court in Mullin emphasized that more is required than a foreseeable plaintiff with a foreseeable injury. Indeed, Webb requires that the relationship between the parties and public policy concerns be addressed. The Court quoted Cuffy v. City of New York, 69 N.Y.2d 255, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987), as follows:
[T]he injured party’s reliance is as critical in establishing the existence of a special relationship as is the municipality’s voluntary affirmative undertaking of a duty to act. That element provides the essential causative link between the “special duty” assumed by the municipality and the alleged injury. Indeed, at the heart of most of these “special duty” cases is the unfairness that the courts have perceived in precluding recovery when a municipality’s voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection. On the other hand, when the reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the “special duty” exception is then no longer justified.
Mullin, 639 N.E.2d at 284 (quoting Cuffy, 513 N.Y.S.2d 372, 505 N.E.2d at 940) (citations from Cuffy omitted).
[16] With respect to public policy, the Court acknowledged existing law “reflecting a public policy that the mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of a particular individual.” Mullin, 639 N.E.2d at 284. The Court recognized, however, that “where ' a governmental entity is aware of the plight of a particular individual and leads that person to believe that governmental rescue services will be used, and the individual detrimentally relies on that promise, it would be unfair to leave that individual worse off than if the individual had not sought assistance from the government at all.” Id. at 284-85.
[17] Similar considerations are at play in the instant case. A special relationship was clearly established when Doe made the call to the DCS hotline and, after making his report; indicated his reluctance to give identifying information. Justifiably relying on the DCS employee’s explicit assurance that such information would be kept confidential, Doe then provided the information. The reasonable foreseeability of harm to Doe and his family upon improper disclosure of this information was evident, as implicitly recognized by DCS’s own policies and I.C. § 31-33-18-2. Ultimately, the Does were left in a far worse position after Doe called the hotline and relied on DCS’s promise.
[18] DCS argues that Koher and Mul-lin addressed a governmental entity’s fail *618 ure to come to the rescue, not failure to maintain confidentiality.[4] Undeniably, this case presents a different context, but the factors set out in Mullin may be seamlessly applied here to determine whether to impose a private duty on DCS. Further, it is important to recognize that.the Does are not seeking to enforce a general right of confidentiality. Their argument, rather, is based on the special relationship established between DCS and Doe during the call in which the assurance was made and reasonably relied upon to the Does’ detriment.
[19] Under the specific circumstances of this ease, the Does have established the existence of a private duty owed to Doe by DCS. Accordingly, we reverse the entry of summary judgment and remand this action to the trial court for further proceedings.
[20] Judgment reversed and cause remanded.
KIRSCH, J„ concurs.
■VAIDIK, C.J., dissents with opinion. .

. We heard oral argument in this case on April 21, 2016, at Martin University. We would like to thank the students, faculty, and administration of the school for their professionalism and hospitality, and we commend counsel for the quality of their presentations.

. Doe and his wife separated for a brief period prior to the events relevant to this case. Between June 2012 and May 2013, Doe remained in the home while the other members of the family moved into an apartment. Doe and his wife began rekindling their relationship around January 2013.

. Alternatively, DCS briefly argued that it did not owe a duty to Doe's family because their identities were not disclosed and that none of the Does could establish compensable damages. DCS does not reassert these arguments on appeal.

. DCS also notes that a civil action based on the failure t9 report child abuse is not authorized at common law. Borne by Borne v. Nw. Allen Cray. Sch. Corp., 532 N.E.2d 1196, 1203 (Ind.Ct.App.1989), trans. denied. In Borne, we observed that maintenance of such an action at common law “would raise substantial questions of causation since the failure [to report] would not in the direct sense be a proximate cause of the injury to the child.” Id. Establishing causation in the case at hand will not raise similar problems because the alleged damages flowed directly from DCS’s failure to maintain confidentiality of Doe’s identity, which it obtained with an express assurance of confidentiality.