

IN THE

# Court of Appeals of Indiana

Rory Kerwood,

*Appellant-Plaintiff*

v.

Elkhart County Sheriff's Department,

*Appellee-Defendant*



FILED

Apr 10 2024, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 10, 2024

Court of Appeals Case No.
23A-PL-2229

Appeal from the Elkhart Superior Court

The Honorable Christopher J. Spataro, Judge

Trial Court Cause No.
20D05-1906-PL-157

**Opinion by Judge Brown**
Judges Riley and Foley concur.

**Brown, Judge.**

[1] Rory Kerwood appeals from the trial court's entry of summary judgment in favor of the Elkhart County Sheriff's Department. We affirm.

**Facts and Procedural History**

[2] On August 1, 2017, the trial court issued an order granting Kerwood's petition for expungement. The order stated Kerwood "was arrested and/or charged on or about July 11, 2014 . . . for the offense of Impersonating a Law Enforcement Officer, a Level 6 felony in multiple counts and Theft, a class A misdemeanor," the theft charge was dismissed, and the impersonation charges resulted in a jury verdict of not guilty in October 2015. Appellant's Appendix Volume V at 43. The order stated that no information concerning the arrest or charges may be retained in any state central repository or other system maintained by a local, regional, or statewide law enforcement agency and that the records related to the case shall be redacted and permanently sealed.

[3] On November 30, 2017, the Elkhart County Sheriff's Department (the "Sheriff's Department") received a report from loss prevention at a Walmart regarding a radio which had been left in a cart. The radio "appeared to be a police radio" and "had A227 written on it." Appellant's Appendix Volume III at 4. Officer Eric Schuman was assigned to the call. Sergeant Adam Leeper, the officer in charge, was informed that a video taken from a security camera showed that the radio had been left by a person wearing a Concord Township Fire Department ("Concord Fire") shirt, and the officers contacted Concord

Fire Assistant Chief Sean Miller, who identified Kerwood as the person wearing the shirt. Assistant Chief Miller indicated that Kerwood had been recently hired as a volunteer, he was serving a probationary period, and during that period he was not permitted to wear department-identifying clothing or carry a radio when he was not on duty. According to Sergeant Leeper, "A227" was "a unit number for then Sergeant Lanzen" with the Sheriff's Department, the officers contacted Sergeant Lanzen to check if he had his radio, he did have his radio, and the concern was that the radio discovered at the Walmart had been illegally obtained.[1] *Id.* Also on November 30, 2017, a meeting was held at a Concord Fire station at which Kerwood, Assistant Chief Miller, Sergeant Leeper, Officer Schuman, and other individuals were present. During the meeting, Sergeant Leeper stated: "We have to be careful when it comes to you because of your past." Appellant's Appendix Volume II at 147. Kerwood asked "what history or past," and Sergeant Leeper "said [his] arrest for the police impersonation."[2] *Id.* at 148. According to Kerwood, he was later forced to resign from Concord Fire, and he signed a resignation letter dated May 28,

---

[1] In his deposition, Kerwood stated that he had purchased the radio "from [his] deputy chief." Appellant's Appendix Volume II at 147.

[2] In his deposition, when asked "[w]hy did you feel it necessary to raise the prior arrest of impersonation in this meeting," Sergeant Leeper answered "[b]ecause he wanted to know why we were asking these questions, and I was just simply laying out the steps of our investigation that had lead [sic] us there." Appellant's Appendix Volume III at 7. When asked "[h]ow were you aware of the arrest for impersonation," Sergeant Leeper said: "I heard about it through the grapevine, if you will, the law enforcement grapevine. Any time anyone gets arrested for police impersonation, it's of note to all officers, because we don't like that, and so that's what I heard about it. That's my only knowledge of it." *Id.*

2018. Kerwood later began a volunteer firefighter position at Kankakee Township Fire Department ("Kankakee Fire").

[4] At some point, Officer Schuman had a conversation with his father during which he learned that Tom Thode was the Chief at Kankakee Fire. Officer Schuman told his father: "This Rory Kerwood, they need to check him out." Appellant's Appendix Volume III at 26. He may also have told his father to "keep an eye out for him." *Id*. at 46. He also told his father that Kerwood had been arrested for impersonating a police officer and about Kerwood being found in possession of a radio with police frequencies.[3] In August of 2018, Officer Schuman had a phone conversation with Chief Thode during which Officer Schuman stated that Kerwood "had been arrested for impersonating an officer at some point," *id*. at 71-72, and told him about the "incident where a radio was found and it belonged to [Kerwood]." *Id*. at 47. Kankakee Fire terminated Kerwood's position as a volunteer firefighter.[4] Kerwood sought a volunteer position with the Springfield Township Fire Department but was not accepted due to its relationship with Kankakee Fire. He volunteered with the

---

[3] Also, according to Captain Michael Culp with the Sheriff's Department, Officer Schuman informed him that he had told his father "there were some character issues that could be concerning to . . . [Kankakee Fire]." Appellant's Appendix Volume II at 219.

[4] According to Kerwood, Chief Thode told him that, due to his police impersonation charges, his employment was being terminated. According to Chief Thode, Kerwood was terminated after he had three infractions "within 60 days of . . . his employment." Appellant's Appendix Volume III at 72. He testified the department's policy was that, "if you're not certified through LaPorte County EMS as a first responder, you cannot respond to medical calls," "the final infraction where we decided that . . . he was going to be relieved of his duties was . . . there was a medical call" and "what he had done is he had gone to the fire station, got in the rescue truck and was driving single . . . to the scene of a medical call in which he was not certified to do driving and/or responding to a medical call." *Id*. He did not remember the first and second infractions.

New Carlisle Fire Department ("New Carlisle Fire") but, after two or three months, New Carlisle Fire received a letter from Kankakee Fire stating that he was not allowed to respond to any mutual aid calls which originated in Kankakee Township, and New Carlisle terminated his position.

[5] In June 2019, Kerwood filed a complaint alleging that he was found not guilty for a prior criminal charge, the court ordered the Sheriff's Department to expunge and seal all records of the charge and arrest, the Sheriff's Department failed to comply with the order, employees of the Sheriff's Department disseminated information about his prior arrest, and as a result he was terminated from Kankakee Fire. In August 2021, the Sheriff's Department filed a motion for judgment on the pleadings. On November 5, 2021, the court issued an order stating that it would treat the Sheriff's Department's motion as a Trial Rule 12(B)(6) motion, finding Kerwood did not have an implied private right of action for the Sheriff's Department's alleged failure to properly expunge or seal his records, stating "common law remedies exist and [the Sheriff's Department was] not entitled to judgment on the pleadings on this issue," and granting the Sheriff's Department's motion as to any claims for a private cause of action based on an alleged violation of a court order of expungement and denying the motion as to all other claims. Appellant's Appendix Volume II at 86.

[6] On November 14, 2021, Kerwood filed an amended complaint alleging Count I, defamation by libel; Count II, defamation by slander; Count III, tortious interference with a business relationship; and Count IV, negligent training,

supervision, and retention. In April 2023, the Sheriff's Department filed a motion for summary judgment on all counts. Kerwood filed a response. On August 1, 2023, the court held a hearing. On August 28, 2023, the court issued a fifteen-page order granting the Sheriff's Department's motion for summary judgment.

## Discussion

[7] Kerwood asserts the trial court erred in concluding he did not have a private right of action against the Sheriff's Department and that it erred in entering summary judgment on the claims in his amended complaint.

### A. *No Implied Right of Action*

[8] Kerwood asserts that a private right of action is implied in the expungement statute. He argues the statute "only contains an enforcement mechanism against those who have directly discriminated against the person because of a prior expunged record" and "[t]here is no independent enforcement mechanism built into the statute for situations experienced by [him] wherein a law enforcement agency tasked with expunging the records fails to abide by the Order and as a result causes harm." Appellant's Brief at 15. The Sheriff's Department argues there is no private right of action under the expungement statute and "[t]he expungement statutes provide one remedy, an infraction, and expand the ability of the courts to provide a remedy by bringing third parties under a court's contempt power." Appellee's Brief at 18.

Whether a statute confers a private right of action is a question of law that we review de novo. *Shirey v. Flenar*, 89 N.E.3d 1102, 1105 (Ind. Ct. App. 2017) (citing *Doe # 1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 201 (Ind. 2017)). The parties do not disagree that the expungement provisions do not expressly provide a private right of action. Rather, Kerwood asserts a private right of action is implied. We examine the language of the statute to determine whether the legislature intended to allow private actions. *See id.* (citing *Doe # 1*, 81 N.E.3d at 202 (explaining that whether a private cause of action exists is "purely a question of legislative intent")). "[W]e must be reluctant to find an implied right of action." *Id.* "Our General Assembly 'often creates rights of action using clear language,' so its omission of such language is evidence that it did not intend to create a private remedy." *Id.* (quoting *Doe # 1*, 81 N.E.3d at 202 (citing statutes that expressly establish rights of action)). "When a statute expressly provides one enforcement mechanism, courts may not engraft another." *Doe # 1*, 81 N.E.3d at 204. "Affirming this principle, Indiana courts find no private right of action where the General Assembly has provided independent enforcement—even if only an infraction." *Id.* (citing *Estate of Cullop v. State*, 821 N.E.2d 403, 409 (Ind. Ct. App. 2005) (no right of action where a statute already provided independent enforcement through a class C infraction)). *See also Coons by Coons v. Kaiser*, 567 N.E.2d 851, 852 (Ind. Ct. App. 1991) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.") (citing *Nat'l R.R. Passenger Corp. v.*

*Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 459, 94 S. Ct. 690, 693-694 (1974) (citation and quotations omitted)), *reh'g denied*; *Borne v. Northwest Allen Cnty. Sch. Corp.*, 532 N.E.2d 1196 (Ind. Ct. App. 1989) (no private cause of action where statutory scheme provided a criminal penalty for the knowing failure to report suspected child abuse), *trans. denied*.

[10] Ind. Code § 35-38-9-10(b) provides that it is unlawful discrimination for any person to suspend, expel, refuse to employ, refuse to admit, refuse to grant or renew a license, permit, or certificate necessary to engage in any activity, occupation, or profession, or otherwise discriminate against any person because of a conviction or arrest record expunged or sealed under the chapter.

[11] Ind. Code § 35-38-9-10(f) provides:

> Any person that discriminates against a person as described in subsection (b) commits a Class C infraction and may be held in contempt by the court issuing the order of expungement or by any other court of general jurisdiction. Any person may file a written motion of contempt to bring an alleged violation of this section to the attention of a court. In addition, the person is entitled to injunctive relief.

Further, a public employee who knowingly or intentionally discloses confidential information commits a class A infraction carrying a fine of up to $10,000. *See* Ind. Code § 5-14-3-10(a); Ind. Code § 34-28-5-4(a).

[12] The Indiana legislature, in enacting Ind. Code § 35-38-9-10(f), set forth mechanisms to enforce the expungement provisions, and we "may not engraft

another." *See Doe #1*, 81 N.E.3d at 204. We cannot infer that the Indiana legislature intended to create a private right of action beyond the mechanisms in Ind. Code § 35-38-9-10(f). *See id.* at 202-204 (addressing whether, in enacting another statute, Ind. Code § 31-33-18-2, the General Assembly intended for the statute to create a right of action despite not saying so expressly; observing the statute contained enforcement mechanisms, including Ind. Code § 5-14-3-10(a); and concluding "our General Assembly might choose to impose a right of action," "[b]ut separation of powers requires us to leave that decision to the legislature, rather than make it ourselves under the guise of statutory interpretation," and "[t]hus, we cannot infer that the General Assembly intended [Ind. Code § 31-33-18-2] to impose civil liability").[5] Reversal on this basis is not warranted.

## B. *Summary Judgment on Amended Counts*

Kerwood contends the trial court erred in entering summary judgment on his claims of defamation, tortious interference with a business relationship, and negligent training, supervision, and retention. The party moving for summary judgment bears the initial burden of making a prima facie showing that there

---

[5] To the extent Kerwood asserts that a failure by the Sheriff's Department to comply with the expungement order did not constitute discrimination but an improper release of information and thus that the enforcement mechanisms in Ind. Code § 35-38-9-10(f) are not directly applicable, he does not argue that he was not permitted to file a motion for contempt or seek injunctive relief related to any improper failure to expunge or seal records or that Ind. Code § 5-14-3-10(a) would be inapplicable. In any event, the legislature elected to set forth the enforcement mechanisms in Ind. Code § 35-38-9-10(f), and we cannot conclude, keeping in mind our reluctance to infer an unwritten intent, that the legislature intended to imply that a private right of action exists beyond the mechanisms set forth in Ind. Code § 35-38-9-10(f) with respect to the release of expunged or sealed records.

are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party. *Id.* "Unsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Stafford v. Szymanowski*, 31 N.E.3d 959, 964 (Ind. 2015) (citation omitted).

### 1. *Defamation Claims*

[14] "To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (citations and quotations omitted). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Id.* (citation omitted). "One type of defamation action, alleging defamation *per se,* arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Id.* (citations omitted). "In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory

*per quod*." *Id*. (citation omitted). "In actions for defamation *per se,* damages are presumed, but in actions for defamation *per quod,* a plaintiff must prove damages." *Id*. "Whether a communication is defamatory is a question of law for the court, unless the communication is susceptible to either a defamatory or non-defamatory interpretation—in which case the matter may be submitted to the jury." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009).

[15] "For a statement to be actionable, it must be clear that it contains objectively verifiable fact regarding the plaintiff." *Sasser v. State Farm Ins. Co.*, 172 N.E.3d 313, 321 (Ind. Ct. App. 2021) (citations omitted), *trans. denied*. "If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Id*. "Just because words may be insulting, vulgar or abusive words do[] not make them defamatory." *Id*. A false assertion of fact is required for a statement to be actionable as defamation. *Id*. *See also J.-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) (to impose liability for defamation, there must be a false statement of fact); *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010) ("To impose liability for defamation, a false statement of fact is required. But truth is a complete defense in civil actions for defamation.") (citations omitted); Ind. Code § 34-15-1-2 ("In an action for libel or slander, the defendant may allege . . . the truth of the matter charged as defamatory . . . ."). "False defamatory words, if written and published, constitute a libel; if spoken, a slander." *Hall v. Shaw*, 147 N.E.3d 394, 407 (Ind. Ct. App. 2020) (citing *Branaman v. Hinkle*, 137 Ind. 496, 502, 37 N.E. 546, 548 (1894) (citation omitted)), *trans. denied*.

[16] With respect to his claim of libel, Kerwood alleged in Count I of his amended complaint that the Sheriff's Department "maintained written arrest record information that were [sic] allowed to be disseminated by anyone accessing [his] criminal background maintained [within] the [Sheriff's Department] records" and "[t]he records had been ordered expunged on or about August 1, 2017, and therefore, [the Sheriff's Department] knew the records were false as disseminated." Appellant's Appendix Volume II at 89-90. In support of its motion for summary judgment, the Sheriff's Department argued there was no evidence that any of its employees disseminated Kerwood's criminal history from its databases. In response, Kerwood argued "[t]he records that were not properly expunged, were utilized by officers and disseminated to others conveying a false impression that [he] had engaged in wrongful and criminal acts." Appellant's Appendix Volume III at 142. He also argued a certain "pass-down report" stated he had a history of police impersonation.[6] *Id*.

[17] In its summary judgment order, the trial court found that "Kerwood does not identify what information retained in the [Sheriff's Department's] database was defamatory," "Kerwood's criminal background information, likely consisting of

---

[6] The "pass-down report," dated November 30, 2017, stated:

> Item Found 4024 Elkhart Rd- S59 reported finding a police radio at Walmart. Radio had A227s unit number written on it. A227 was found to have his radio. Investigation found it belonged to Rory Kerwood who has [a] history of police impersonation and is currently a cadet with Concord Fire. [Kerwood] provided documentation from FCC showing he is legally allowed to carry it, although CFD advised he cannot carry per their regulations. Radio taken to see if it ever belonged to us 10-25 (A277, A245, A272)

Appellant's Appendix Volume V at 31.

arrest, booking, and charging information, is both objectively verifiable and truthful information," "Kerwood was, in fact, arrested and charged with impersonating a law enforcement officer," and "Kerwood has not shown that there were any written, objectively verifiable, and false facts contained within his records ordered expunged from the [Sheriff's Department's] records." Appellant's Appendix Volume V at 179-180. It also found the "purported pass-down report" met "neither the Trial Rule 56(E) requirements for affidavits, nor the Trial Rule 56(C) requirements for admissibility of other designated evidence." *Id*. at 180. Kerwood did not present an affidavit regarding the authenticity of the "pass-down report" or point to designated evidence showing the report was published. Sergeant Leeper and Officer Schuman did not indicate that they learned of Kerwood's prior arrest from the report. Sergeant Leeper indicated that he learned about Kerwood's arrest for impersonation "through the . . . law enforcement grapevine," Appellant's Appendix Volume III at 7, and Officer Schuman indicated that he learned of the charges against Kerwood from the media. Moreover, any written information in one of the Sheriff's Department's databases stating that Kerwood was arrested and charged with impersonating an officer did not constitute a false statement or false assertion of fact. The court did not err in entering summary judgment in favor of the Sheriff's Department on Count I.

[18] With respect to his claim of slander, Kerwood alleged in Count II that employees of the Sheriff's Department made false statements implying he engaged in criminal conduct or misconduct in his employment. In support of

its summary judgment motion, the Sheriff's Department argued that Officer Schuman's warnings to "keep an eye out" or "check him out" and Sergeant Leeper's warning "we have to be careful" were not defamatory because they did not assert objectively verifiable facts about Kerwood. Appellant's Appendix Volume III at 113. It argued Sergeant Leeper and Officer Schuman's mentions of Kerwood's arrest for impersonation were true. In response, Kerwood argued the statements "clearly imply Kerwood engaged in criminal activity which is false." *Id*. at 146. He argued the statement "because of your past" implied that he engaged in provable acts in his past and the statement "they need to check him out" implied provable facts of a negative nature. *Id*. at 148.

[19] The trial court found that Sergeant Leeper's alleged statement "[w]e have to be careful of you because of your past" was made while investigating the radio found in a shopping cart, Sergeant Leeper clarified that he was referring to Kerwood's prior impersonation arrest, the reference to Kerwood's arrest was an objectively verifiable fact that was true, and the remainder of the statement was a subjective view and not defamatory. Appellant's Appendix Volume V at 181. It also found Sergeant Leeper's communications were shielded from liability by Ind. Code § 34-13-3-3(a)(8). It found Officer Schuman's alleged statements about Kerwood's arrest and finding the radio were true and his alleged statements regarding the need to "keep an eye out for him" and "to check him out" were "the subjective view, interpretation, or theory of [Officer] Schuman" and not statements that contain objectively verifiable facts. Appellant's Appendix Volume V at 182.

On appeal, Kerwood argues that, in stating "[w]e have to be careful with you because of your past," Sergeant Leeper "directly implied that [he] believed [Kerwood] stole the radio because of [his] past." Appellant's Brief at 21. He also argues that, at the time of the meeting with Concord Fire, Sergeant Leeper "was no longer enforcing any law" because "he confirmed with Lanzen that [the radio] had not been stolen" and thus Ind. Code § 34-13-3-3(a)(8) was not applicable. *Id.* at 23. He argues that Officer Schuman's statements, in context, were intended to convey that he committed criminal conduct. The Sheriff's Department argues Officer Schuman's statements to Chief Thode were true and that it was immune from any claim arising from Sergeant Leeper's statement as he was investigating whether the radio was stolen.

The designated testimony reveals that a meeting was held at a Concord Fire station at which Kerwood, Assistant Chief Miller, Sergeant Leeper, and Officer Schuman were present. During his deposition, Kerwood was asked about the reason for the meeting, and he answered: "I was interrogated about why I had this radio and wanting to know if it came from the sheriff's department. They believed it was stolen." Appellant's Appendix Volume II at 147. He stated "I don't have any problem with them investigating that" and "I agree that they were investigating a stolen radio, yes." *Id.* He stated that Sergeant Leeper said "[w]e have to be careful when it comes to you because of your past." *Id.* When asked "[h]e left the term 'past' ambiguous," Kerwood testified: "It was history or past. And when I asked what history or past, he said the -- my arrest for the police impersonation." *Id.* at 148. To the extent Sergeant Leeper's statement

referred to Kerwood's arrest for police impersonation, the statement did not constitute a false assertion of fact. We agree with the trial court that the remainder of the statement, including "[w]e have to be careful," was Sergeant Leeper's subjective view. Similarly, Officer Schuman's statements to his father and later to Chief Thode regarding Kerwood's prior arrest for police impersonation and the discovered radio did not constitute false statements or false assertions of fact, and his statements to his father that Kankakee Fire "need[ed] to check [Kerwood] out," Appellant's Appendix Volume III at 26, or "keep an eye out for him," *id*. at 46, merely reflected his subjective view.

[22] The court also found Sergeant Leeper's communications were shielded from liability under Ind. Code § 34-13-3-3(a)(8). Ind. Code § 34-13-3-3(a) provides "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . (8) The adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." The trial court rejected Kerwood's assertion that Sergeant Leeper was not acting in a law enforcement capacity when he attended the meeting. We agree with the trial court. Sergeant Leeper testified "[w]e called Sergeant Lanzen to ask him if he had his radio, he did, so then the thought was maybe he had switched it out for a different one but his unit number was still written on this one, and if that was the case, if it was our radio, I wasn't aware that we ever sold radios to the public, so my concern was that it had been illegally obtained." Appellant's Appendix Volume III at 4. Later, when asked

"at that time when you called on Mr. Kerwood, did you have any reason to believe that the property was stolen," Sergeant Leeper answered affirmatively, and when asked "[w]hat was your reason," he replied: "Well, the fact that it had what would be our unit number on it. I didn't have any indication of any other agencies in the area that would have a unit number like that, and while Sergeant Lanzen had his current radio, it's not out of the question that he could have needed to swap his radio out for a different one, and this was one that he used to have." *Id*. at 6. In his deposition, Kerwood agreed that Sergeant Leeper was investigating whether the discovered radio had been stolen. The entry of summary judgment on Count II was proper.

### 2. *Tortious Interference with a Business Relationship*

[23] Kerwood argues the court erred in granting summary judgment on his claim of tortious interference with a business relationship. The elements of tortious interference with a business relationship are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016) (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n.21 (Ind. 2001)). Additionally, the Indiana Supreme Court has held that "this tort requires some independent illegal action." *Id*. (citing *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.,* 796 N.E.2d 286, 291 (Ind. 2003)). Defamation, however, "does not constitute illegal conduct for the purpose of determining

whether one tortiously interfered with the business relationship of another." *Id.* (citing *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 961 (Ind. Ct. App. 2014)). "The lack of justification is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Miller*, 11 N.E.3d at 961 (citation and quotations omitted).

[24] Kerwood alleged in Count III that Officer Schuman, acting as a representative of the Sheriff's Department, made false statements to his employer with the intent to interfere with the business relationship between him and Kankakee Fire. The Sheriff's Department argued that Kerwood did not identify an independent illegal action by Officer Schuman and that Officer Schuman's communication with Chief Thode was justified. Kerwood argued it is reasonable to infer that Officer Schuman accessed the Sheriff's Department's records "in violation of the expungement statute to learn of [his] impersonation charges" and "[t]his would constitute an illegal act." Appellant's Appendix Volume III at 156-157. The court found that Officer Schuman's statements about Kerwood's arrest and the radio incident were historical facts and that the Sheriff's Department was not liable for tortious interference in connection with Officer Schuman's conversation with Chief Thode. It found "there is no evidence the Sheriff's failure to fully expunge played a role in achieving Eric Schuman's purported end of tortiously interfering in Kerwood's employment with [Kankakee Fire], and cannot constitute the independent illegal action necessary to support liability for that tort." Appellants Appendix Volume V at

185. It also found that Officer Schuman's communications to Chief Thode were justified, "Kerwood was in a public safety role as a volunteer firefighter," and Officer Schuman, "as a police officer with a duty to protect and serve the public, had a legitimate, non-malicious interest in making sure public safety employers are aware of their employees' backgrounds." *Id*. at 186.

[25] Kerwood argues that Officer Schuman's statements to Chief Thode, in context, were intended to convey wrongful conduct on his part and thus were not truthful, that "[a]ccessing and using the information that had been ordered expunged constitutes an illegal act on the part of the [Sheriff's Department] for failing to comply with the statute," and that "[t]here was no justification for Schuman to go to [his] employer other than to maliciously interfere with his job." Appellant's Brief at 28-29. The Sheriff's Department maintains Officer Schuman's statements were justified and Officer Schuman committed no illegal act to support the claim.

[26] We have found that Officer Schuman's statements to Chief Thode regarding Kerwood's prior arrest for police impersonation and the discovered radio did not constitute false statements or false assertions of fact. Further, defamatory statements do not constitute illegal conduct for purposes of a claim for tortious interference with a business relationship. *See McCollough*, 63 N.E.3d at 344. Officer Schuman stated that he learned of the charges against Kerwood for impersonating an officer from the media, and Kerwood did not designate evidence showing that Officer Schuman accessed records related to him at the Sheriff's Department. Sergeant Leeper stated that he learned about Kerwood's

arrest for impersonation "through the . . . law enforcement grapevine." Appellant's Appendix Volume III at 7. The Sheriff's Department did not commit an independent illegal act for purposes of a claim for tortious interference with a business relationship. The court did not err in granting summary judgment in favor of the Sheriff's Department on Count III.

### 3. *Negligent Training, Supervision, and Retention*

[27] Finally, Kerwood argues the court erred in entering summary judgment on his claim of negligent training, supervision, and retention. Count IV of his amended complaint alleged the Sheriff's Department failed to properly train and supervise its employees in protecting confidential and expunged records. The Sheriff's Department argued it had immunity under Ind. Code § 34-13-3-3(a)(7). The trial court found that the Sheriff's Department's employees were acting within the scope of their employment and that the Sheriff's Department had immunity under Ind. Code § 34-13-3-3(a)(7) and common law with respect to Count IV. On appeal, Kerwood argues that, "while Schuman was acting under the authority of the [Sheriff's Department], he was not acting within the scope of his employment" and the Sheriff's Department "was negligent in hiring Schuman and failed to properly train its employees." Appellant's Brief at 31.

[28] Ind. Code § 34-13-3-3(a) provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (7) The performance of a discretionary function . . . ." The employment and supervision of employees in governmental offices is

a discretionary function. *Foster v. Pearcy*, 270 Ind. 533, 538, 387 N.E.2d 446, 450 (1979). We conclude that Ind. Code § 34-13-3-3(a)(7) applied to Kerwood's claim that the Sheriff's Department did not properly train and supervise its employees with respect to the protection of expunged or sealed records and that the court did not err in entering summary judgment in favor of the Sheriff's Department on Count IV of Kerwood's amended complaint.

[29] For the foregoing reasons, we affirm the trial court.

[30] Affirmed.

Riley, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Amy D. Griner
Griner Legal, LLC
Lakewood, Colorado

ATTORNEYS FOR APPELLEE

Michael F. DeBoni
Nathaniel M. Jordan
Adrian D. Bottomley
Yoder Ainlay Ulmer & Buckingham, LLP
Goshen, Indiana